BRANDON SCHOOL DISTRICT v MICHIGAN EDUCATION
SPECIAL SERVICES ASSOCIATION

Docket No. 126891. Submitted April 17, 1991, at Lansing. Decided
September 16, 1991, at 9:20 A.M. Leave to appeal sought.

The Brandon School District and several other school districts
petitioned the Commissioner of Insurance for a contested case
hearing of their allegations that the Michigan Education Spe-
cial Services Association and the Michigan Education Associa-
tion had engaged in conduct that violated the Insurance Code,
MCL 550.1 *et seq.*; MSA 24.31 *et seq.*, particularly the Third
Party Administrator Act, MCL 550.901 *et seq.*; MSA 24.901 *et
seq.* The petitioners also requested the Insurance Commissioner
to disqualify himself from hearing the petition because he had
once been employed by both respondents. The commissioner
denied the petition for a contested case hearing, and the
Ingham Circuit Court, Peter D. Houk, J., affirmed the denial.
The petitioners appealed, claiming that the commissioner
abused his discretion in denying the petition and the request
for disqualification.

The Court of Appeals *held:*

1. 1983 AACS, R 500.2104 provides that the Insurance Com-
missioner may decline to take further action upon a petition
for a contested case hearing where the decision is in conformity
with applicable statutes and rules and the commissioner pro-
vides the petitioner with a brief written explanation of the
reasons for the decision.

2. MCL 500.2043; MSA 24.12043, which governs unfair or
deceptive practices by insurers, grants the Insurance Commis-
sioner discretion to commence enforcement proceedings upon
the commissioner's finding of probable cause to believe that a
violation has occurred. Likewise, MCL 500.950; MSA 24.950,
which governs violations of the Third Party Administrator Act,
vests the commissioner with discretion to commence enforce-
ment proceedings upon a finding of probable cause. Sections
2043 and 950 do not require that a contested case hearing be
held upon a finding of probable cause, leaving the determina-
tion whether such a hearing should be conducted to the com-
missioner's discretion.

3. In this case, the Insurance Commissioner did not abuse his

discretion in denying the petition for a contested case hearing. The commissioner's finding that there was not probable cause to believe that any violation had occurred was based on separate investigations conducted by the Bureau of Insurance and the Attorney General. The commissioner also provided the petitioners with a brief written explanation of the reasons for denial.

4. In the absence of a showing of actual bias or that the Insurance Commissioner was enmeshed in other matters involving the respondents because of his prior employment with them, the refusal of the request for disqualification was proper.

Affirmed.

*Thrun, Maatsch & Nordberg, P.C.* (by *James T. Maatsch, Kevin S. Harty,* and *C. George Johnson*), for the petitioners.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Harry G. Iwasko* and *Susan I. Leffler,* Assistant Attorneys General, for the Insurance Commissioner.

*Fraser Trebilcock Davis & Foster, P.C.* (by *Iris K. Socolofsky*), for the Michigan Education Special Services Association.

*White, Beekman, Przybylowicz, Schneider & Baird, P.C.* (by *Sharon L. LaPointe*), for the Michigan Education Association.

Before: SAWYER, P.J., and MARILYN KELLY and NEFF, JJ.

PER CURIAM. Petitioners appeal as of right from an order of the circuit court affirming the Insurance Commissioner's denial of their petition for a contested case hearing. We affirm.

I

Petitioners are public school districts and are

parties to collective bargaining agreements with local affiliates of the Michigan Education Association. The Michigan Education Special Services Association is a nonprofit corporation that administers insurance plans for the MEA and its members and provides health-care benefits to employees and bargaining units represented by local labor organizations affiliated with the MEA, as well as other school district employees.

The collective bargaining agreements between petitioners and the MEA affiliates all provided that health-care benefits for union employees would be provided through the MESSA. For some years MESSA health plans were underwritten by the Equitable Insurance Company. The MESSA informed interested parties on April 9, 1985, that Blue Cross & Blue Shield of Michigan would become an underwriter of choice for the MESSA effective September 1, 1985.

The notice stated that beginning on that date plans underwritten by Blue Cross would be available at rates seven percent below those charged by Equitable. Moreover, beginning July 1, 1985, there would be a five percent increase in rates for MESSA plans underwritten by Equitable. The notice further provided that MESSA plans would continue to be underwritten by Equitable until such time as written notification requesting a change was received by the MESSA and, in cases involving collective bargaining agreements, the written notification to the MESSA must be signed both by the employer and by representatives of the employee group, union, or association. Finally, the notice stated that, in exchange for a reduction in bookkeeping and associated costs, the MESSA would pass on savings to parties to collective bargaining agreements that informed the MESSA by May 15, 1985, that they would switch to Blue Cross, by

waiving the five percent rate increase for the existing Equitable plans for the months of July and August 1985. In effect, this would result in no rate increase for these plans for the months of July and August 1985, followed by a seven percent decrease in premium rates beginning on September 1, 1985, when the underwriting switched from Equitable to Blue Cross.

Petitioners were unable to reach agreements with their local MEA bargaining units, apparently because the locals conditioned their consent to the underwriter change upon the school districts agreeing to pass on a percentage of the premium cost savings to employees in the form of higher wages or expanded benefits.

On September 6, 1985, petitioners filed their initial petition for a contested case hearing with the Insurance Commissioner, claiming that various actions taken by the MEA and the MESSA and their representatives violated various portions of the Insurance Code and the Third Party Administrator Act. Eventually, a fourth amended petition was filed, alleging fifteen counts against the MEA and the MESSA, including the allegation that the MESSA was not licensed by the Insurance Bureau as an insurer, insurance agency, insurance company, insurance agent, or third-party insurance administrator, even though it performed these functions.

The MESSA initially filed a verified statement of exemption from the Third Party Administrator Act, claiming that it was not subject to the act, but it then applied for and obtained a certificate of authority to operate as a third-party administrator while the petition for a contested case hearing was pending.

On October 2, 1985, after the original petition was filed, Herman W. Coleman was appointed Commissioner of Insurance. By letter dated Octo-

ber 4, 1985, petitioners' attorney requested that Commissioner Coleman disqualify himself and refrain from direct or indirect participation in all proceedings involving the case. The request was based on Coleman's prior employment with the MEA as its executive director and secretary from 1973 to 1980 and his position as secretary and treasurer of the MESSA from 1973 to 1979.

By letter dated October 9, 1985, Commissioner Coleman responded by stating that he was committed to having contested cases decided in a fair and impartial manner and that he would seek the advice of the Attorney General concerning his obligations, rights, and options. The commissioner did not respond to this matter again.

On August 28, 1987, the Attorney General's office sent a letter to Commissioner Coleman, stating that that office had extensively investigated the agreement between the MEA and Blue Cross and concluded that there had been no risk assumed by the MEA under the agreement and that all risks are borne solely by Blue Cross. The letter further stated that the major portion of the complaint by the Brandon School District concerned illegal labor-relations practices on the part of the MEA and that those were not within the Insurance Commissioner's jurisdiction. The letter stated that the sole question for the Insurance Commissioner to examine was whether the MEA was engaged in the business of insurance. The letter concluded that the MEA was clearly not engaged in the business of insurance and therefore no hearing should be held pursuant to the complaint filed by the Brandon School District. The letter also stated that because there was nothing in the case for the Insurance Commissioner to administer and that because neither the Insurance Commissioner's staff nor the Attorney General's office could find a

violation of the Insurance Code, it would not be proper for a hearing to be held by the Insurance Bureau. The letter did not address petitioners' concern over the commissioner's past connections with the MEA and the MESSA.

On April 10, 1988, Commissioner Coleman issued an eight-page order denying the petition in its entirety. The commissioner found that counts I through IX and XIII through XV depended on the claim that the MEA was engaged in the business of insurance. The commissioner, on the basis of the review done by his staff and the Attorney General's office, concluded that the MEA assumed no risk under the agreement and therefore was not engaged in the business of insurance. The commissioner also concluded, on the basis that the MEA was not engaged in the business of insurance, that he lacked authority to order a contested case hearing regarding petitioners' claims in these counts. As for the remaining counts, the commissioner found that the investigation failed to reveal probable cause to believe that a violation of the Third Party Administrator Act, MCL 550.901 *et seq.*; MSA 24.901 *et seq.*, occurred. He also found that the claim that the MESSA acted illegally as a third-party administrator because it was not properly licensed was moot because, in the interim, the MESSA had become licensed.

Petitioners appealed the commissioner's ruling to the Ingham Circuit Court. The circuit court denied their appeal.

II

Petitioners contend that the commissioner's failure to initiate a contested case hearing when probable cause exists is both an arbitrary action and an abuse of discretion. They claim that evi-

dence sufficient to establish probable cause of a violation has been introduced.

Where no hearing is required, it is not proper for the circuit court or this Court to review the evidentiary support of an administrative agency's determination. Judicial review is not de novo and is limited in scope to a determination whether the action of the agency was authorized by law. *Michigan Waste Systems v Dep't of Natural Resources,* 147 Mich App 729, 736; 383 NW2d 112 (1985). The decision must be affirmed unless it is in violation of statute, in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious. *Id.* Here, petitioners' only claim is that the commissioner's action was arbitrary and capricious.

The Insurance Code and the Third Party Administrator Act delegate the discretion to commence enforcement proceedings to the Insurance Commissioner. MCL 500.210, 500.1244, 500.2029, 500.2043, 500.2066 and 550.950; MSA 24.1210, 24.11244, 24.12029, 24.12043, 24.12066 and 24.950. With respect to violations of chapter twenty of the Insurance Code and violations of the Third Party Administrator Act, the statutes express this delegation of discretion in terms of the commissioner having "probable cause" to believe that there was a violation of provisions of the Insurance Code or the Third Party Administrator Act. MCL 500.2043; MSA 24.12043 and MCL 550.950; MSA 24.950. Under these provisions, when the commissioner has probable cause to believe that a violation has occurred, the commissioner has authority to commence enforcement proceedings. The commissioner in this case found that no probable cause existed.

The trial court found that the commissioner's decision was authorized by law, stating:

Respondent is granted the sole discretion to commence enforcement proceedings, dependent upon a finding of probable cause to believe that a violation of the insurance code has occurred. MCL 500.210; MSA 24.1210, MCL 500.1244; MSA 24.11244, MCL 500.2029; MSA 24.12029. The permissible range of action is defined in 1983 AACS, R 500.2104 which allows the amendment, investigation and denial of requests for contested case hearings. In this case, the Insurance Commissioner exercised his legislatively granted discretion within that permissible range, and briefly stated the reasons for the decision in a written explanation. . . . The independent consideration of the probable cause issue by both the Attorney General's office and the Insurance Bureau Staff shows a lack of arbitrariness or caprice, and constitutes no abuse of discretion. The Court, therefore, finds Respondent's action to have been authorized by law.

Petitioners contend that the commissioner exercised his discretion in an arbitrary and capricious manner because there existed probable cause to believe that violations of the statutes in question had occurred. Further, petitioners contend that legislative intent requires the commissioner to hold a contested case hearing when probable cause exists. The language of the statutes does not support this argument. MCL 500.2043; MSA 24.12043 states that when probable cause exists, the commissioner may hold a hearing. This is not a mandatory decree, but one that leaves the decision to the commissioner's discretion. Under the Third Party Administrator Act, MCL 550.950; MSA 24.950, the commissioner is responsible for the determination of probable cause. Once probable cause is determined, the commissioner is required to contact the third-party administrator, but has the statutory authority to summarily dispose of

the complaint upon agreement of the parties before a hearing. *Id.* There is no requirement of a hearing, even with a finding of probable cause.

The commissioner was authorized by law in his exercise of discretion to determine that there was no violation of either statute. The commissioner is authorized by administrative rule (1983 AACS, R 500.2104) to decline to take action on a petition for a contested case hearing, if he acts in conformity with applicable statutes. As noted above, the commissioner has discretion in determining what action to take once he makes a determination of probable cause. The administrative rule only requires the commissioner to give a petitioner a "brief explanation of the reasons for the decision." Thus, petitioners' claim that there were insufficient factual findings to support the commissioner's order is without merit. The order dismissing the request for a contested case hearing addressed both claims of statutory violations and constituted the "brief explanation" required by the administrative rule.

The commissioner's order was also not arbitrary and capricious. In *Bundo v Walled Lake,* 395 Mich 679, 703, n 17; 238 NW2d 154 (1976), our Supreme Court, citing *United States v Carmack,* 329 US 230, 243; 67 S Ct 252; 91 L Ed 209 (1946), defined "arbitrary" and "capricious" as follows:

> Arbitrary is: " '[W]ithout adequate determining principle . . . Fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, . . . decisive but unreasoned.' "
>
> Capricious is: " '[A]pt to change suddenly; freakish; whimsical; humorsome.' "

The commissioner's order was based on a review

of petitioners' claims by the staffs of the Insurance Bureau and the Attorney General. This review included an examination of the contract between the MESSA and Blue Cross. On the basis of this review, the commissioner concluded that the contract was outside the regular authority of the bureau. This finding was not arbitrary or capricious.

Petitioners also allege that the commissioner erred in ruling that there was no probable cause to believe that a violation of the Third Party Administrator Act had occurred and in ruling that such claims were moot because the MESSA had become licensed. The trial court did not address these issues. However, the statute clearly gives the commissioner the authority to reach a reconciliation with an alleged violator without having a hearing. Even if he had determined that there was probable cause to believe that there was a violation, which he did not, the commissioner was not obligated to conduct a hearing. The statute vests the commissioner with discretion over how to pursue violators.

We affirm the trial court's decision with regard to the commissioner's decision not to grant a contested case hearing for alleged violations of the Insurance Code.

III

Petitioners contend that the right to an impartial hearing is a basic component of due process and, because of the commissioner's previous employment, it is highly probable that he could not be impartial. Here, no contested case hearing was required by statute. However, even where an administrative hearing is not held, the petitioner before an administrative agency is still entitled to an impartial decision maker.

The trial court's decision did not address the issue of the commissioner's refusal to disqualify himself. Petitioners have made no showing of actual bias, but claim an appearance of bias or partiality on the basis of the commissioner's prior employment with the MEA and MESSA.

In *Crampton v Dep't of State,* 395 Mich 347, 351; 235 NW2d 352 (1975), our Supreme Court identified four situations where, without a showing of actual bias, the United States Supreme Court has disqualified a decision maker who:

(1) has a pecuniary interest in the outcome;
(2) "has been the target of personal abuse or criticism from the party before him";
(3) is "enmeshed in [other] matters involving petitioner . . ."; or
(4) might have prejudged the case because of prior participation as an accuser, investigator, fact finder or initial decisionmaker.

Petitioners' allegation of bias by the commissioner based on his prior employment with respondents would involve a charge that he is enmeshed in other matters involving the parties. At the time of the order involving petitioners, the commissioner was no longer employed or involved with respondents. In *Livonia v Dep't of Social Services,* 423 Mich 466; 378 NW2d 402 (1985), our Supreme Court determined that the Director of the Department of Social Services was not to be presumed to be biased because of his previous involvement in a lawsuit. At the time the facts of that case arose, the director was no longer involved in legal proceedings. The Court concluded that

the director was not so immediately and personally "enmeshed" in the appellate proceedings as to

automatically preclude him from rendering an impartial administrative decision. [*Id.,* p 510.]

Likewise, the fact that the Insurance Commissioner was no longer employed by respondents and had not been so employed for five years before the petition was submitted to him supports the conclusion that he was no longer "enmeshed" in a matter involving any of the parties, thus preserving the presumption of impartiality. We also note that the commissioner followed the recommendation of the Attorney General and his staff in making the decision to deny the contested case hearing. Because there was no showing of actual bias and the commissioner's past involvement was too attenuated to consider him enmeshed in this case, there was no error in the commissioner's refusal to disqualify himself.

Affirmed.