NATURAL RESOURCES DEFENSE COUNCIL v
DEPARTMENT OF ENVIRONMENTAL QUALITY

Docket No. 310036. Submitted March 6, 2013, at Lansing. Decided March 21, 2013, at 9:05 a.m.

The Natural Resources Defense Council and the Sierra Club petitioned the Ingham Circuit Court to review a decision by the Department of Environmental Quality and its director (the DEQ) to issue the city of Holland a permit to install a new boiler in one of its electricity generating plants. Petitioners alleged that the DEQ had failed to adequately consider alternatives as required by the Clean Air Act, 42 USC 7401 *et seq.*, and associated state and federal regulations. The court, Rosemarie E. Aquilina, J., granted Holland's motion to intervene. After a hearing, the court affirmed the DEQ's decision to issue the permit. Petitioners appealed.

The Court of Appeals *held*:

1. The Court of Appeals had subject-matter jurisdiction to consider petitioners' appeal as of right. MCL 324.5505(8) provides that any person may appeal the DEQ's decision to issue or deny a permit to install equipment that may emit an air contaminant in accordance with MCL 600.631, which in turn provides in part that an agency decision from which an appeal or other judicial review has not otherwise been provided for by law may be made in accordance with the court rules. MCR 7.203(A)(1)(a) provides that the Court of Appeals has jurisdiction of an appeal of right filed by an aggrieved party from final judgments or final orders of the circuit court or court of claims, except judgments or orders of the circuit court on appeal from any other court or tribunal. When deciding whether to issue or deny permits to install, the DEQ is not acting in a judicial or quasi-judicial capacity; therefore, it is not a tribunal for purposes of the exception in MCR 7.203(A)(1)(a). Although the staff comment to MCR 7.203(A)(1)(a) states that an appeal from a lower court judgment after review of an agency decision will be by leave only, staff comments are not part of the court rule and are not binding.

2. The circuit court may have erred by reviewing the evidence underlying the DEQ's determination, given that no contested case

hearing was required. However, any error was harmless because the court correctly determined that the DEQ's decision was authorized by law.

3. The circuit court properly affirmed the DEQ's issuance of the permit because the DEQ's analysis of the best technology available to control the emission of regulated pollutants from the proposed boiler was adequate. The fact that the DEQ did not follow the commonly used "top-down" method of conducting this analysis was not determinative of whether its decision to issue the permit was authorized by law because this method is not mandatory; a reasoned analysis that takes into account the considerations enumerated in the Clean Air Act is sufficient. The DEQ provided a reasoned analysis of each type of fuel that the proposed boiler could use without major modifications, including wood and biomass. Accordingly, the DEQ's decision did not violate 42 USC 7479(3) and the permit to install was authorized by law.

Affirmed.

1. APPEALS — JURISDICTION — SUBJECT-MATTER JURISDICTION — APPEALS FROM OTHER COURTS OR TRIBUNALS — AGENCY DECISIONS — CLEAN AIR ACT — PERMITS TO INSTALL EQUIPMENT.

The Court of Appeals has subject-matter jurisdiction over appeals by right of decisions by the Department of Environmental Quality to issue or deny a permit to install equipment that may emit an air contaminant pursuant to MCL 324.5505(8); when deciding whether to issue or deny permits to install, the DEQ is not acting in a judicial or quasi-judicial capacity and is therefore not a tribunal for purposes of the exception in MCR 7.203(A)(1)(a); the staff comment to MCR 7.203(A)(1)(a) stating that an appeal from a lower court judgment after review of an agency decision will be by leave only is not a part of the court rule and is not binding (MCL 600.631).

2. ADMINISTRATIVE LAW — CLEAN AIR ACT — PERMITS TO INSTALL EQUIPMENT — ANALYSIS OF BEST AVAILABLE CONTROL TECHNOLOGY — "TOP-DOWN" METHOD.

A reasoned analysis of the best technology available to control the emission of regulated pollutants from a facility seeking a permit is statutorily sufficient if it takes into account the considerations enumerated in the Clean Air Act; use of the "top-down" method of analyzing the best available control technology is not mandatory (42 USC 7479[3]).

Natural Resources Defense Council (by *Jessie J. Rossman*) and Great Lakes Environmental Law Center

(by *Nick Schroeck*) for the Natural Resources Defense Council and the Sierra Club.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Neil D. Gordon*, Assistant Attorney General, for the Department of Environmental Quality and its director.

*Barnes & Thornburg LLP* (by *Charles M. Denton* and *Valerie B. Mullican*) and *Cunningham Dalman, P.C.* (by *Andrew J. Mulder*), for the city of Holland.

Before: MURRAY, P.J., and MARKEY and WHITBECK, JJ.

PER CURIAM. In this appeal concerning the requirements of the federal Clean Air Act,[1] petitioners Natural Resources Defense Council and the Sierra Club (petitioners) appeal as of right the circuit court's order affirming a permit to install issued by respondent Michigan Department of Environmental Quality (the Department), which allows intervening respondent city of Holland's Board of Public Works (individually and collectively, Holland) to install a new electric generating unit in an existing power plant. Petitioners contend that the circuit court applied the wrong standard of review and that the Department's decision was not authorized by law. We disagree, and affirm.

### I. FACTS

#### A. BACKGROUND

Holland operates three electric generation plants, one of which is the James DeYoung Generating Station. The DeYoung plant has three active coal-fired electric

---

[1] 42 USC 7401 *et seq.*

generating units. In 2006, Holland decided to replace an old boiler in one of the units. In January 2007, Holland petitioned the Department for permits to replace the boiler with a new, circulating fluidized bed boiler. Holland's application included an analysis that assessed the impact of the various technologies on particulate matter emissions. It determined that, if it used a fabric filter, its emissions would fall below Environmental Protection Agency guidelines.

### B. HOLLAND'S ANALYSIS

During the Department's public comment period, petitioners submitted comments, including an objection that Holland had failed to conduct a "best available control technology" analysis on clean fuels, contrary to federal law. Petitioners requested that Holland analyze "clean fuels" such as wood and biomass.

On August 17, 2009, Holland provided additional information to the Department, including a best available control technology analysis for different types of fuel. The analysis identified six possible fuels that the boiler could burn without significant modification, including biomass (which in turn included wood), petroleum coke or "petcoke," tire-derived fuel, and varieties of coal. The analysis considered seven specific characteristics for each fuel: heating value, ash content, sulfur content, chroline content, mercury content, fluorine content, and lead content.

Concerning particulate matter, the analysis noted that "[s]ome fraction of the volatile organic compounds emitted from the unit will contribute to condensable particulate, which may be higher for the biomass fuels that are more difficult to combust." It indicated that western sub-bituminous coal has a lower sulfur and mercury content than eastern coal, but that the supply

of this coal is limited by long-term contracts. Concerning carbon monoxide, the analysis stated that biomass has a higher moisture content, which is likely to cause increased carbon monoxide formation. The analysis determined that "[w]ith the exception of biomass, increased usage of varying amounts of coal, petcoke, and [tire-derived fuel] is not likely to have an effect on the formation of [carbon monoxide]."

The analysis also compared a variety of technologies, and the effects the technologies would have on various emissions. The analysis ultimately determined that a fabric filter, limestone injection, and the use of fuel to control sulfur oxides would result in the best available control technology.

### C. THE MANDAMUS ACTION

In August 2010, the Department denied Holland's permit application on the grounds that Holland failed to demonstrate that it needed the improvement to meet its projected capacity requirements. In September 2010, Holland sought a writ of mandamus, pursuant to which the circuit court remanded the case to the Department to base its decision on whether the application met the air quality requirements in effect on August 20, 2010. The Department ultimately granted Holland a permit to install.

### D. PETITIONERS' APPEAL IN THE CIRCUIT COURT

In May 2011, petitioners petitioned the circuit court to review the Department's issuance of the permit on several grounds. Pertinent to this appeal, petitioners contended that Holland failed to comply with the requirements of the Clean Air Act and federal and state regulations. Petitioners asserted that these statutes

and regulations required the Department to evaluate clean fuels and consider alternative technologies and that the Department's analysis of these fuels and technologies was inadequate and flawed.

The circuit court granted Holland's motion to intervene. At the hearing on the petition, the circuit court commented on the "enormous administrative record" and opined that it could not substitute its judgment for the Department's as long as the Department's decision was supported by substantial evidence. The circuit court also determined that the agency's decision was authorized by law, and it affirmed the Department's issuance of the permit.

Petitioners now appeal, arguing that (1) the circuit court failed to apply the proper standard of review and (2) the Department's permit was not authorized by law because the "best available control technology" analysis did not comply with the Clean Air Act.

## II. HOLLAND'S JURISDICTIONAL CHALLENGE

### A. STANDARD OF REVIEW

We review de novo whether this Court has subject-matter jurisdiction to hear an appeal, because it is a question of law.[2]

### B. LEGAL STANDARDS

Statutes and court rules determine the jurisdiction of this Court.[3] The Legislature has provided in MCL 324.5505(8) that "[a]ny person may appeal the issuance or

---

[2] *Lapeer Co Clerk v Lapeer Circuit Judges*, 465 Mich 559, 566; 640 NW2d 567 (2002); *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009).

[3] Const 1963, art 6, § 10; *Chen*, 284 Mich App at 191.

denial by the department of a permit to install . . . in accordance with [MCL 600.631]." MCL 600.631 in turn provides that

> [a]n appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law . . . . Such appeals shall be made in accordance with the rules of the supreme court.

MCR 7.203(A)(1)(a) provides that this Court does *not* have jurisdiction over an appeal of right from an order of the circuit court issued after an appeal to that court from a *tribunal*:

> (A) Appeal of Right. The court has jurisdiction of an appeal of right filed by an aggrieved party from the following:
>
> (1) A final judgment or final order of the circuit court, or court of claims, . . . except a judgment or order of the circuit court
>
> (a) on appeal from any other court *or tribunal* . . . . [Emphasis supplied.]

### C. APPLYING THE STANDARDS

Holland argues that this Court does not have subject-matter jurisdiction to hear this appeal because it is from "any other court or tribunal," and thus MCR 7.203(A)(1)(a) prohibits an appeal of right. We disagree.

Holland primarily relies on the language of the staff comment to MCR 7.203(A)(1)(a), which states: "An appeal from a lower court judgment after review of an agency decision *will be by leave only.*" (Emphasis added.) However, a staff comment is not part of the court rule and does not bind this Court.[4] Considering only the plain language of MCR 7.203(A)(1)(a), we

---

[4] See *People v Petit*, 466 Mich 624, 632 n 9; 648 NW2d 193 (2002).

disagree with Holland's contention and the staff comment, insofar as it applies to an appeal of right from a circuit court's order affirming or denying the Department's decision to issue or decline to issue a permit to install under MCL 324.5505(8). We conclude that we have subject-matter jurisdiction to hear, as an appeal of right, such an appeal.

Under MCR 7.203(A)(1)(a), a party does not have an appeal of right in this Court arising out of an order of a *tribunal* that was appealed in the circuit court. Therefore, the question is whether the Department is acting as a "tribunal" when issuing or denying a permit to install.

"Tribunals include administrative agencies acting in a judicial or quasi-judicial capacity[.]"[5] However, not all agencies' actions are taken in a judicial or quasi-judicial capacity.[6] To determine whether an administrative agency's determination is adjudicatory in nature, courts compare the agency's procedures to court procedures to determine whether they are similar.[7] Quasi-judicial proceedings include procedural characteristics common to courts, such as a right to a hearing, a right to be represented by counsel, the right to submit exhibits, and the authority to subpoena witnesses and require parties to produce documents.[8]

The hearings in this case were public hearings, not adversarial hearings. Indeed, the Department does not have the statutory authority to hold a contested case

---

[5] *Fort v Detroit*, 146 Mich App 499, 503; 381 NW2d 754 (1985).

[6] See *Vander Toorn v Grand Rapids*, 132 Mich App 590, 597; 348 NW2d 697 (1984).

[7] *Nummer v Dep't of Treasury*, 448 Mich 534, 543; 533 NW2d 250 (1995); *id.* at 558-559 (MALLETT, J., dissenting).

[8] See *id.* at 542-543; *id.* at 558-559 (MALLETT, J., dissenting).

hearing concerning a permit to install.[9] There is no indication that interested persons here had the opportunity or right to call witnesses or submit exhibits. The procedures the Department used to determine whether to issue a permit in this case are not at all similar to the procedures that courts use. We conclude, therefore, that the Department was not acting as a "tribunal" when it issued Holland's permit to install. And we further conclude that MCR 7.203(A)(1)(a) does not apply and that this Court has the jurisdiction to hear this appeal as an appeal of right.

### III. THE STANDARD OF REVIEW OF AN AGENCY DECISION NOT SUBJECT TO A CONTESTED CASE HEARING

#### A. OUR STANDARD OF REVIEW

Whether a circuit court applied the appropriate standard of review is a question of law that this Court reviews de novo.[10]

#### B. THE CIRCUIT COURT'S STANDARD OF REVIEW

When the agency's governing statute does not require the agency to conduct a contested case hearing, the circuit court may not review the evidentiary support underlying the agency's determination.[11] Judicial review is " 'limited in scope to a determination whether the action of the agency was authorized by law.' "[12] The agency's action was not authorized by law if it violated

---

[9] *Wolverine Power Supply Coop, Inc v Dep't of Environmental Quality*, 285 Mich App 548, 572; 777 NW2d 1 (2009).

[10] *Arthur Land Co, LLC v Otsego Co*, 249 Mich App 650, 661-662; 645 NW2d 50 (2002).

[11] *Northwestern Nat'l Cas Co v Comm'r of Ins*, 231 Mich App 483, 488; 586 NW2d 563 (1998).

[12] *Id.*, quoting *Brandon Sch Dist v Mich Ed Special Servs Ass'n*, 191 Mich App 257, 263; 477 NW2d 138 (1991).

a statute or constitution, exceeded the agency's statutory authority or jurisdiction, materially prejudiced a party as the result of unlawful procedures, or was arbitrary and capricious.[13] Courts review de novo questions of law, including whether an agency's action complied with a statute.[14]

### C. APPLYING THE STANDARDS

Petitioners contend that the circuit court improperly deferred to the Department, rather than reviewing de novo whether the Department's decision complied with the Clean Air Act. We conclude that, to the extent that the circuit court erred when reviewing the Department's decision, its error was harmless.

The circuit court opined that the Department's "expertise in this particular area of regulation is entitled to due deference." Read in context, the circuit court's statement about any deference that would be due to the Department follows its statement that it could not substitute its judgment for that of the Department unless the Department's decision was not supported by substantial evidence, and precedes its statement that it must "stick to the record that was made." From the context of its statement, it is clear that whatever deference the circuit court expressed was toward the Department's interpretation of the evidence.

The circuit court may have erred in this case because there was no contested case hearing, and therefore the circuit court should not have reviewed the record evidence. But the circuit court's ruling does not indicate that

---

[13] *Id.*

[14] *Wolverine Power Supply Coop, Inc*, 285 Mich App at 554; see also *In re Complaint of Rovas against SBC Mich*, 482 Mich 90, 100-101; 754 NW2d 259 (2008).

it applied any standard other than the de novo standard when it reviewed whether the Department's decision was authorized by law. The circuit court ruled as follows:

> I think the petitioners have brought up some very interesting points, but I also believe that they've failed to carry their burden to prove that [the Department's] decision was not authorized by the law. I do believe the agency's decision is authorized by law. I believe it was not arbitrary and capricious.

We are not convinced from this ruling that the circuit court applied an incorrect standard when reaching these conclusions.

This Court will not overturn a circuit court's order on the basis of a harmless error.[15] A circuit court's misapplication of the substantial-evidence test in a case in which it only has authority to determine whether the Department's decision was authorized by law is a harmless error if it properly determined that the agency's decision was authorized by law.[16] We conclude that this error, if error actually occurred, was harmless because, for reasons we will discuss, the circuit court was correct when it determined that the Department's decision was authorized by law.

### IV. REQUIREMENTS OF THE FEDERAL CLEAN AIR ACT

#### A. STANDARD OF REVIEW

As previously discussed, courts review de novo questions of law, including whether an agency's action complies with a statute.[17]

---

[15] MCR 2.613(A).

[16] See *Northwestern Nat'l Cas Co*, 231 Mich App at 490-491.

[17] *Wolverine Power Supply Coop, Inc*, 285 Mich App at 554; see *In re Rovas Complaint*, 482 Mich at 100.

We note that resolution of this issue requires us to interpret and apply a federal statute. This Court may review an issue of federal law regarding a federal statute, and interpret federal statutory provisions and regulations.[18] Unless there is a conflict among federal courts, this Court is bound by the holdings of federal courts on federal questions.[19]

### B. STATUTORY BACKGROUND

Under the Clean Air Act's program designed to prevent the significant deterioration of air quality, a major facility that emits air pollution must obtain a permit before it can install a modification.[20] The Michigan Legislature has granted the Department authority to promulgate rules to control air pollution and comply with the Clean Air Act.[21] Michigan's regulatory scheme, which operates somewhat differently, requires certain facilities to obtain a permit before installing a major modification.[22]

Before issuing a permit, the agency must hold a public hearing at which the public may comment on the proposed facility's "air quality impact of the major source, alternatives to it, the control technology required, and other appropriate considerations."[23] The Department must consider these comments when making its decision.[24]

---

[18] *Woodman v Miesel Sysco Food Co*, 254 Mich App 159, 165; 657 NW2d 122 (2002).

[19] *Id.*; *Schueler v Weintrob*, 360 Mich 621, 633-634; 105 NW2d 42 (1960).

[20] 42 USC 7475; 42 USC 7479(2)(C); 42 USC 7411(a)(4) (defining "modification"); *Alaska Dep't of Environmental Conservation v Environmental Protection Agency*, 540 US 461, 472; 124 S Ct 983; 157 L Ed 2d 967 (2004).

[21] MCL 324.5512(1)(b).

[22] Mich Admin Code, R 336.2802(3).

[23] Mich Admin Code, R 336.2817(2)(e); see also 42 USC 7475(a)(2), (4).

[24] Mich Admin Code, R 336.2817(2)(f).

### C. BEST AVAILABLE CONTROL TECHNOLOGY

Among other requirements, an analysis of the best available control technology must be conducted and the facility must be "subject to the best available control technology for each pollutant subject to regulation under [chapter 85 of the Act, 42 USC 7401 through 7671q] . . . ."[25] The Clean Air Act defines "best available control technology" as

> an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under [chapter 85 of the Act] emitted from or which results from any major emitting facility, which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility through application of production processes and available methods, systems, and techniques, including fuel cleaning, clean fuels, or treatment or innovative fuel combustion techniques for control of each such pollutant.[26]

A state's permitting agency has broad authority to determine what is "maximum" and "achievable."[27]

### D. APPLYING THE STANDARDS

As an initial matter, we note that *whether* the Department considered clean fuels, or should have considered a specific blend of fuels, is not at issue in this appeal. Petitioners' contention is that the Department's decision was not authorized by law because it did not *adequately* consider fuels. We conclude that the Department did conduct an adequate best available control technology analysis.

---

[25] 42 USC 7475(a)(3), (4); see also Mich Admin Code, R 336.2810(3).

[26] 42 USC 7479(3); see also Mich Admin Code, R 336.2801(f).

[27] *Alaska Dep't of Environmental Conservation*, 540 US at 485, 490.

Petitioners primarily base their argument on the Department's failure to follow the "top-down" model of conducting the best available control technology analysis. The "top-down" method supplied in the Environmental Protection Agency's *New Source Review Workshop Manual*[28] is a common approach to determining the best available control technology.[29] Under this method, the applicant ranks all available control technologies from best to worst.[30] "The most stringent technology is [the best available control technology] unless the applicant can show that it is not technically feasible, or if energy, environmental, or economic impacts justify a conclusion that it is not achievable."[31]

However, this method is not mandatory.[32] Because the top-down method is not required by the Clean Air Act, whether the Department complied with or failed to comply with this model does not determine whether the Department's issuance of the permit was authorized by law.

Considering the discretion afforded to state permitting authorities, the United States Supreme Court has stated that "[o]nly when a state agency's [best available control technology] determination is 'not based on a reasoned analysis' may [the United States Department of Environmental Protection] step in to ensure that the

---

[28] Environmental Protection Agency, *New Source Review Workshop Manual: Prevention of Significant Deterioration and Nonattainment Area Permitting* (October, 1990 draft), available at <http://www.epa.gov/NSR/ttnnsr01/gen/wkshpman.pdf> (accessed March 21, 2013).

[29] *Alaska Dep't of Environmental Conservation v United States Environmental Protection Agency*, 298 F3d 814, 822 (CA 9, 2002), aff'd 540 US 461.

[30] *Id.*

[31] *Id.*

[32] *Id.*

statutory requirements are honored."[33] This implies—and we conclude—that a reasoned analysis that does take into account the considerations the statute enumerates is statutorily sufficient. Indeed, the type of framework the Department employs to determine the best available control technology is *exactly* the sort of determination best entrusted to an agency's expertise.

We conclude that the Department complied with the requirements of the federal Clean Air Act because the analysis provided a reasoned analysis of each type of fuel that the facility could utilize without major modifications. Though "clean fuels" is one of the control methods the Department must consider under the Act, the Act does not generally require a facility to redesign itself to use the *cleanest* fuels.[34] In this case, the analysis considered every type of fuel the proposed boiler could use, including wood and biomass, which the Sierra Club specifically recommended be analyzed as "clean fuels." Combined, the analysis considered how this variety of fuels, in combination with other processes, systems, and techniques, affected regulated emissions like particulate matter and carbon monoxide. Because the Department's analysis included those "clean fuels" that Holland's plant could use, we conclude that the analysis adequately considered clean fuels under the federal Clean Air Act.

We conclude that the Department's decision did not violate 42 USC 7479(3) and, therefore, that the permit to install was authorized by law. Accordingly, the trial court properly affirmed the Department's issuance of the permit.

---

[33] *Alaska Dep't of Environmental Conservation*, 450 US at 490.

[34] See *Sierra Club v United States Environmental Protection Agency*, 499 F3d 653, 655 (CA 9, 2007).

## V. CONCLUSIONS

For the reasons we have detailed, we conclude that this Court has subject-matter jurisdiction to hear an appeal of right from the circuit court's decision to affirm a permit when a party has appealed to the circuit court under MCL 324.5505(8). We also conclude that the circuit court properly determined that the Department's action was authorized by law, and did not apply an unduly deferential standard when doing so.

We affirm.

MURRAY, P.J., and MARKEY and WHITBECK, JJ., concurred.