*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MEDS CAFE, LLC,

        Appellee,

v

CITY OF WESTLAND,

        Appellant.

UNPUBLISHED
March 21, 2024

No. 364102
Wayne Circuit Court
LC No. 21-004422-AA

Before: CAVANAGH, P.J., and JANSEN and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right the circuit court's order remanding this administrative matter to defendant's City Council for additional review of plaintiff's application for a marijuana business license. The circuit court determined that a supporting document plaintiff had inadvertently submitted late warranted consideration. We reverse.

## I. FACTS

This Court described the marijuana licensing system here at issue in *Blue Water Cannabis Co, LLC v Westland*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2023 (Docket Nos. 359144 and 359168):

> In October 2019, the City adopted the Westland Uniform Marijuana Business Ordinance, § 27-1 *et seq.*, to exercise its police, regulatory, and licensing powers over both medical-use and adult-recreational-use businesses selling marijuana to the extent permissible under state law, specifically the Medical Marihuana Facilities Licensing Act, MCL 333.27101 *et seq.*, and the Michigan Regulation and Taxation of Marijuana Act (MRTMA), MCL 333.27951 *et seq.* Westland Code, §§ 27-1, 27-2. The City created three types of licenses and allowed licenses to be issued for up to eight business locations. Westland Code, §§ 27-5(a) and 27-6.
>
> Applicants were required to submit an application with the City and pay a fee of $5,000, up to $2,500 of which was refundable if an application was denied.

Applicants were required to provide proof that they had secured rights to any property intended to be used for their business locations. Applicants were also required to submit proof of prequalification through the Michigan Marijuana Regulatory Agency. Applicants were required to sign and attest that the application, under penalty of perjury, was true to each applicant's information, knowledge, and belief. Westland Code, §§ 27-4 and 27-9.

Completed applications were evaluated on the basis of a written policy approved by the City Council. That policy was required to contain rules for evaluation and selection of the competing applications, and the ordinance also provided that a selection committee would carry out the policy. Westland Code, § 27-12(a). The ordinance provides that "[t]he selection committee shall score and rank applications for each category of business location based on the rules in the application consideration policy." Westland Code, § 27-12(b).

On May 18, 2020, the City adopted the Marijuana Business Application Consideration Policy (the "Policy") after it was approved by the City Council, which set forth the rules for evaluating license applications. Section 1.11 of the Policy established a Selection Committee as an administrative subcommittee, comprised of three city administrative employees appointed by the mayor, to sort, review, and score the applications, among other duties outlined in the Policy. The Policy specifically provided that the Selection Committee shall not make a final decision regarding the awarding of licenses. Policy, § 1.11.

The Selection Committee was required to conduct a prereview of all applications, and all properly filed applications were to be separated into different licensing categories. Policy, §§ 3.1-3.6. The Selection Committee was then required to review and score the applications according to the Policy's guidelines. Policy, § 3.7. The Selection Committee was required to score the applications using the scoring rubric adopted by the City, which defined certain categories to consider for each planned business and the points to award in order to arrive at a ranking of the applications in each license category. Policy, § 4.1. The Policy also adopted procedures to follow in the event of ties among applicants. This included first giving greater weight to certain scores under the scoring rubric. Policy, §§ 4.8-4.10. If there was still a tie after those adjustments, the Policy required that a blind lottery drawing be held to determine the ranking of applications. Policy, §§ 4.11, 4.12, and 4.13. The Selection Committee was required to compile a list of the applicants and their scores, ranking them from highest to lowest, and to send that list to the City Council and to each applicant. Policy, §§ 5.1 and 5.2.

Each applicant had a 10-day period from notice of its right to appeal to file an appeal with the Marijuana Business Review Board (the "Review Board") to challenge its score. Policy, §§ 5.3 and 5.4. The Review Board was to consider each written appeal at a public hearing and applicants appealing also had a right to orally address the Review Board for 10 minutes. Policy, §§ 5.5 and 5.6. After hearing all appeals, the Review Board was required to issue its recommendation to either uphold the list or make modifications. Any ties were to be resolved in the

same manner that the Selection Committee used to resolve ties. After the Review Board's recommendations were forwarded to the City Council, the City Council was to consider and certify the list with any adjustments. The City Council's decision regarding the list was final. Policy, §§ 5.7 and 5.8. Only the highest ranked applicants in each license category would be considered for and offered a conditional license. The City would not maintain a waiting list for unsuccessful applicants. Policy, §§ 6.1-6.3. [*Blue Water Cannabis Co*, unpub op at 3-5.]

Plaintiff commissioned both a Phase I and a Phase II Environmental Site Assessment for the property for which plaintiff planned to apply for a license. Both assessments were completed by July 7, 2020. The Phase I revealed "no evidence" of controlled recognized environmental conditions, historical recognized environmental conditions, or *de minimis* conditions. It did report one "Recognized Environmental Condition" (REC):

> The previous operation as a radiator repair facility in the 1970's, prior to environmental regulations, the length of time the repair operations, and the lack of information regarding how wastes from these operations was handled is considered a REC. Additionally, the lack of exterior pavement would allow infiltration to the subsurface if wastes were not handled property [sic].

The environmental assessor opined that "additional investigations are warranted to determine if past operations have impacted the property." The Phase II merely reiterated some of the findings from the Phase I.

Plaintiff applied for one of the three available collocated business licenses, Westland Code, § 27-6, and submitted its application materials on July 15, 2020. Plaintiff attached the Phase II, and also documentation showing that the Phase I had been commissioned, but mistakenly did not include the Phase I itself. The deadline to submit application materials was July 16, 2020. Policy, § 2.1. Only two situations were described whereby new materials would be considered after that date: (1) "a continuing duty to amend" for any change in state-required information, and (2) a request initiated by the City for supplemental information. Policy, §§ 2.8 and 2.9. Amendments under (1) required a $25 fee, and needed to be submitted in writing to the City Clerk. Policy, §§ 2.9 and 8.3.

Sixteen companies applied for the three collocated licenses. On November 6, 2020, the Selection Committee notified the City Council of its scoring. The Selection Committee scored only one of the collocated applicants at 100 points. Plaintiff and six other companies scored 92 points. Plaintiff was given 0 out of 8 points for Topic 2(b): "The Applicant will develop and remediate property that is environmentally contaminated as determined by reference to current regulations and guidance from the Environmental Protection Agency (EPA) or the Michigan Department of Environment, Great Lakes, and Energy (EGLE)." In accordance with the application policy, a random drawing was held to rank the tied applicants. The results of the drawing left plaintiff ranked fourth among the collocated-license applicants.

The application policy stated that appeals were limited to the documents the Selection Committee possessed at the time of its decision. Policy, § 5.4. Plaintiff appealed its score to the Review Board, stating that further environmental study had not been conducted "due to scheduling

difficulties and the current global covid-19 pandemic." The Selection Committee sent the Review Board its evaluation and recommended against altering plaintiff's score. The Selection Committee noted that plaintiff had not submitted the Phase I, and that plaintiff's application package did not "show environmental contamination."

On January 25, 2021, plaintiff submitted the Phase I by way of an e-mail to the city's director of planning, with no explanation beyond "[p]lease see attached documents." The planning director replied to plaintiff that day, explaining that the document could not be considered. Several public Review Board meetings were held, and ultimately the Review Board recommended the same top three applicants for collocated licenses.

On March 13, 2021, the City Council held a public study session. Topic 2(b) was one of the topics of discussion. It was noted that applicants with "Phase One reports that only alluded to possible contamination" were not awarded points on this Topic. On March 15, 2021, the City Council voted to grant the licenses as recommended by the Selection Committee and Review Board. Plaintiff was not granted a license.

Plaintiff appealed the City Council's decision to the circuit court. After a hearing, the court ruled that "the way in which the review committee disregarded or failed to review the totality" of plaintiff's filings was improper. The circuit court found that plaintiff had "complied with the requirements" of the application process, and that defendant's decision not to review the Phase I was arbitrary and capricious.

The circuit court ordered a remand for "a full review of Meds Café, LLC's complete application, including the Phase I Environmental Site Assessment, . . . to determine whether or not the proposed site met the scoring criteria requirements of being previously contaminated land." It also ordered "that the City Council . . . issue findings of fact to support its decision on remand."

## II. ANALYSIS

## A. JURISDICTION

As a preliminary matter, plaintiff challenges this Court's jurisdiction to hear this case as an appeal by right. "[W]hether this Court has jurisdiction is a question of law that this Court reviews de novo." *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009).

Plaintiff argues that the order of remand was itself the result of an appeal in the circuit court "from any other court or tribunal," which thus does not entitle defendant to an appeal by right in this Court. See MCR 7.203(A)(1)(a). Plaintiff contends that that the initial application decision was the work of a tribunal. We disagree.

"Tribunals include administrative agencies acting in a judicial or quasi-judicial capacity." *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 86; 832 NW2d 288 (2013) (quotation marks and citation omitted).

To determine whether an administrative agency's determination is adjudicatory in nature, courts compare the agency's procedures to court procedures to determine

whether they are similar. Quasi-judicial proceedings include procedural character-istics common to courts, such as a right to a hearing, a right to be represented by counsel, the right to submit exhibits, and the authority to subpoena witnesses and require parties to produce documents. [*Id.*]

The licensing application process employed here involved public forums, not adversarial contests. These hearings did not include the formal calling, or cross-examination, of witnesses. They were formatted more as general forums to discuss issues involved with the licensing process. Review Board members, City Councilors, the applicants, and general members of the public were all given time to speak. Overall, the procedures used to decide the licensing matters were "not at all similar to the procedures that courts use." *Id*. at 87. Because the initial administrative decision did not issue from a tribunal, we do have operational jurisdiction to hear this appeal by right of the circuit court's decision.

## B. REMAND

Defendant argues that the circuit court erred by remanding this case for consideration of plaintiff's Phase I. We agree.

> [W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings. This latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence. As defined in numerous other contexts, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made. [*Boyd v Civil Serv Comm*, 220 Mich App 226, 234-235; 559 NW2d 342 (1996).]

"Where no hearing is required, it is not proper for the circuit court or this Court to review the evidentiary support of an administrative agency's determination. Judicial review is not de novo and is limited in scope to a determination whether the action of the agency was authorized by law." *Brandon Sch Dist v Michigan Ed Special Servs Ass'n*, 191 Mich App 257, 263; 477 NW2d 138 (1991). "The decision must be affirmed unless it is in violation of statute, in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious." *Id*. "A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or ad-justment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott v Civil Serv Comm*, 298 Mich App 158, 162; 825 NW2d 674 (2012). Administrative rulings may be reversed upon a "showing of arbitrary action or a clear abuse of discretion." *Tireman-Joy-Chicago Improvement Ass'n v Chernick*, 361 Mich 211, 219; 105 NW2d 57 (1960).

The circuit court's basis for remanding this matter was not a proper one. The court found that plaintiff had "complied with the requirements" of the application process in its submission of the Phase I, with no further explanation of how that was so. Not in dispute is that plaintiff

submitted its Phase I well after the specified deadline for consideration of application materials. This submission was neither a valid supplement (as it was not requested by the Selection Committee) nor a valid amendment (as it offered neither changed nor state-required information). The parties agree that the Phase I was not required for the application to be valid: it was merely a supporting document intended to earn additional Topic 2(b) points. It was submitted so late that the Review Board process—which was constrained to consider only the materials that were before the Selection Committee—had already begun. The Phase I was also not submitted to the City Clerk, was not accompanied by the amendment fee, and did not describe or otherwise present itself as an amendment. Thus, there were several ways in which plaintiff failed to meet the requirements of the application process. Defendant's decision not to consider the Phase I, far from being error, was the correct action to take in a competitive application process where rules for submissions were enforced in connection with all applicants. The circuit court's remand order threatened to undermine the application process. For these reasons, we conclude that the circuit court erred by ruling that defendant had acted arbitrarily and capriciously by disregarding a document that was improperly submitted on several fronts.

Plaintiff argues that the remand decision can alternatively be affirmed because of the evidence for Topic 2(b) points that it did submit. We disagree. The chosen interpretation of Topic 2(b), which plaintiff does not dispute was applied to all applicants, was that no points would be awarded absent some proof of actual contamination. The mere possibility of contamination, with no proof of actual contamination, thus earned no points. The evidence that plaintiff submitted brought up only the possibility of contamination, while calling for further study.[1]

While plaintiff views the operative interpretation of Topic 2(b) as overly strict, it is a reasonable reading of "property that *is* environmentally contaminated" (emphasis added). And we stress that all indications are that it was applied consistently: the seven-way tie arose because other applicants were also not given a more permissive interpretation on Topic 2(b).

For these reasons, we conclude that plaintiff has identified no part of the administrative process here that was arbitrary and capricious.

Reversed. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Allie Greenleaf Maldonado

---

[1] We further note that the inclusion of the Phase I would not have remedied this shortcoming: the Phase I only minimally expanded upon this evaluation, never stating that any contamination was actually found. Moreover, in the appellate process plaintiff acknowledged that further environmental study had not been conducted.