*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KWITOSLAWA DARIA SZWAJKUN,

Appellant,

v

BLUE CROSS BLUE SHIELD OF MICHIGAN,

Appellee.

UNPUBLISHED
October 14, 2024
9:58 AM

No. 368296
Macomb Circuit Court
LC No. 2023-001368-AA

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

In this case arising under the Patient's Right to Independent Review Act (PRIRA), MCL 550.1901, *et seq.*, appellant appeals as of right the circuit court's order affirming the decision of the Michigan Department of Insurance and Financial Services (MDIFS) Director determining that appellee was not responsible for covering appellant's use of the weight-loss drug, Saxenda, under the terms of appellant's insurance policy. We affirm.

## I. BACKGROUND

Appellant suffers from several medical conditions, including obesity, hyperlipidemia, and severe sleep apnea. Appellant's endocrinologist prescribed her the weight-loss drug, Saxenda, for its intended purpose, and also in hopes that it would benefit her hyperlipidemia and sleep apnea. Appellee, appellant's health insurance provider, refused to cover the drug under the prescription-drug portion of appellant's health insurance policy. The insurance policy stated that "lifestyle drugs," which included weight-loss drugs, were not covered. After appellee denied coverage, appellant requested an external review of that decision with the MDIFS pursuant to PRIRA, arguing that Saxenda was covered under the terms of her insurance policy because the drug was medically necessary to treat her hyperlipidemia and sleep apnea. The MDIFS Director determined that this presented only an issue of contract interpretation, such that the director could conduct her own review without assigning the case to an independent review organization. MCL 550.1911(8). The MDIFS Director then upheld appellee's decision to deny appellant coverage for Saxenda, reasoning that appellee's decision was "consistent with the terms of [appellant's] benefit plan." Appellant appealed the MDIFS Director's decision to the circuit court, which affirmed. The court

-1-

reasoned that weight-loss drugs were specifically excluded from coverage under the terms of appellant's insurance policy, and that this was true regardless of whether the drug was medically necessary to treat appellant's hyperlipidemia and sleep apnea. This appeal followed.

## II. STANDARD OF REVIEW

In cases in which no hearing was held, judicial review of the decision of an administrative officer is limited to determining whether the decision was authorized by law. Const 1963, art 6, § 28; *Brandon Sch Dist v Mich Ed Special Servs Ass'n*, 191 Mich App 257, 263; 477 NW2d 138 (1991). A decision is not authorized by law if it violates a statute or the constitution, is in excess of the statutory authority or jurisdiction of the agency, is made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious. *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 455; 688 NW2d 523 (2004). An agency's decision is arbitrary if it is unrestrained by reason or principle, or is arrived at through the exercise of will "without consideration or adjustment with reference to principles, circumstances, or significance." *Id*. at 472 (quotation marks and citation omitted). A decision is capricious if "it is apt to change suddenly" or is so unreasoned or unprincipled that it appears "whimsical." *Id*. at 472 (quotation marks and citation omitted).

## III. COVERAGE

Appellant argues that the circuit court erred when it affirmed the determination of the MDIFS Director that Saxenda was not covered under the terms of appellant's health insurance policy. We disagree.

"Enacted in 2000, PRIRA provides covered persons with the opportunity to seek external review of a health carrier's adverse determination, such as a decision to terminate or deny coverage for a health care service." *English*, 263 Mich App at 455-456. A person challenging an adverse determination must first exhaust "the health carrier's internal grievance process provided for by law." MCL 550.1907(2). After doing so, the person may request "external review" by the Director of the MDIFS. MCL 550.1911(1). If the application for external review contains all the required information, the director must "accept" the request. MCL 550.1911(4). "If a request is accepted for external review and appears to involve issues of medical necessity or clinical review criteria, the director shall assign an independent review organization at the time the request is accepted for external review." MCL 550.1911(7). An independent review organization is an entity that "conducts independent external reviews of adverse determinations." MCL 550.1903(x). If an accepted request for external review "does not appear to involve issues of medical necessity or clinical review criteria, and appears to only involve purely contractual provisions of a health benefit plan," then "the Director may keep the request and conduct his or her own external review." MCL 550.1911(8). Regardless of whether a request for external review is assigned to an independent review organization or the review is conducted by the MDIFS Director, the director

makes the ultimate coverage determination. *Ross v Blue Care Network of Mich*, 480 Mich 153, 175; 747 NW2d 828 (2008).[1]

Here, the MDIFS Director determined that appellant's request for external review "only involve[d] purely contractual provisions of a health benefit plan," and exercised its discretion under MCL 550.1911(8) to conduct her own external review. "Insurance policies are contracts and, in the absence of an applicable statute, are subject to the same contract construction principles that apply to any other species of contract." *Titan In Co v Hyten*, 491 Mich 547, 554; 817 NW2d 562 (2012). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 292; 778 NW2d 275 (2009).

The record in this case contains a document entitled "Blue Cross Premier PPO Bronze Benefits Certificate," herein referred to as "the insurance policy." Neither party seriously disputes that the insurance policy was the document that controlled whether Saxenda was covered.

The insurance policy generally set forth which benefits were covered under the plan, and which were not. A section entitled "Prescription Drugs Not Covered" included a long, bulleted list of categories of prescription drugs not covered by the insurance policy. One of the listed categories was "[l]ifestyle drugs, such as but not limited to drugs used for weight loss or erectile dysfunction."

Under the plain terms of the insurance policy, Saxenda, as a weight-loss drug, was excluded from coverage. Appellant argues that the insurance policy was ambiguous regarding whether Saxenda was covered because she was prescribed Saxenda "for medical reasons"—treating her hyperlipidemia and sleep apnea. Although the insurance policy described weight-loss drugs as "lifestyle" drugs, there was no indication that a term that appellee used broadly to describe a category of drugs was dispositive when the insurance policy listed a more specific category of drugs that were not covered. The definition section of the insurance policy defined "Lifestyle Drugs" as "[d]rugs such as but not limited to those that treat erectile dysfunction or help a person lose weight." Thus, lifestyle drugs were defined to include weight-loss drugs. Weight-loss drugs were not necessarily considered lifestyle drugs because of the familiar connotations of the word "lifestyle." That a weight-loss drug has been prescribed in hopes that weight loss will help alleviate other medical conditions does not mean that the drug no longer falls under that expressly excluded category of drugs. In short, that the insurance policy considered weight-loss drugs to be "lifestyle drugs" did not make the policy ambiguous—the policy excluded coverage for "lifestyle drugs," which were defined as including drugs to "help a person lose weight," and Saxenda was one such drug.

---

[1] When *Ross* was decided, requests for external review were heard and decided by the Commissioner of the Office of Financial and Insurance Regulation. In 2013, the Governor issued an executive order that transferred the Office of Financial and Insurance Regulation to the newly created Department of Insurance and Financial Services, which is led by a "Director" rather than a "Commissioner." Executive Order No. 2013-1. The Legislature updated PRIRA to reflect this change when it passed 2016 PA 274.

Appellant directs this Court's attention to a decision of the MDIFS Director in which the director approved a weight-loss drug over appellee's objection, and appellant contends that the director's "approval in that case but the denial in [appellant's] case" was arbitrary and capricious. In the case appellant cites, however, appellee "denied the request [for the weight-loss drug] on the basis that its medical criteria were not met." *Petitioner v Blue Cross Blue Shield of Mich*, order of the Department of Insurance and Financial Services, entered October 19, 2023 (Case No. 219329-001), p 1. More specifically, appellee denied the petitioner's request for the weight-loss drug in that case because appellee only covered "the requested medication when you have a diagnosis of type 2 diabetes," not to treat obesity. *Id*. at 3. The case was referred to an independent review organization, which was asked whether appellee's denial of the weight-loss drug was "consistent with the standard of care," and the independent review organization opined that it was not, and that the petitioner met the "standard of care criteria such that [the weight-loss drug] was medically necessary." *Id*. at 3-4.

Here, in contrast, the MDIFS Director's order states that appellee "denied [appellant's] request on the basis [that] weight loss drugs are excluded under the terms of her coverage," which was consistent with the denial letter appellee sent appellant.[2] Because appellee denied coverage on the basis of the terms of appellant's policy, the director determined that this case presented only a contractual issue such that the director was permitted to review appellant's case herself, see MCL 550.1911(8), rather than referring the case to an independent review organization. And, for the reasons explained, the MDIFS Director correctly concluded that weight-loss drugs were not covered under the insurance policy. There are thus multiple reasons why the director's decision in this case was different than the one to which appellant cites—appellee gave a different reason for its denial in the other case, that different reason for denial gave rise to a different review process, and the different review process involved different considerations.

Appellant also argues that the circuit court and the MDIFS Director erred by determining that she was not covered by a high-deductible plan. This is significant, according to appellant, because appellee issued a "High-Deductible Health Plan Preventative Drug Coverage" list that specifically listed Saxenda as being covered. Assuming without deciding that appellant is covered by a high-deductible plan, the document that appellant directs our attention to states, "Depending on your plan, some drugs on this list may not be covered and you'll have to pay the full price of the drug. Your plan's approved drug list and coverage rules determine what's covered." The circuit court relied on this language to reason that "even if a drug is listed in the high deductible health plan preventative drug coverage document, it may still be excluded under the insured's specific plan," and, here, the insurance policy excluded weight-loss drugs like Saxenda. We agree with this reasoning—Saxenda was not necessarily covered under appellant's plan solely on the basis that appellant had a high-deductible plan and Saxenda was listed among the drugs generally covered by high-deductible plans. The list of drugs generally covered by high-deductible plans clearly stated that each individual plan had a more specific list of covered prescription drugs, which established what drugs were covered under the particular plan. The insurance policy at issue, as

---

[2] Appellee's denial letter to appellant stated, "We can't provide coverage for this drug for the following reasons: The requested medication is excluded from coverage under your drug plan. Your drug plan does not cover medications to treat obesity."

-4-

discussed, expressly excluded coverage for weight-loss drugs. Therefore, the MDIFS Director did not err when concluding that Saxenda was not covered under appellant's plan, and the circuit court did not err when it affirmed that decision.

## IV. MEDICAL REVIEW

Appellant next argues that the MDIFS Director erred by not referring this case to an independent review organization. We disagree.

The MDIFS Director is required to refer a request for external review to an independent review organization when the request involves a question of "medical necessity or clinical review criteria." MCL 550.1911(7). See also *Ross*, 480 Mich at 169. While PRIRA does not define the term "medical necessity," it defines "clinical review criteria" as "the written screening procedures, decision abstracts, clinical protocols, and practice guidelines used by a health carrier to determine the necessity and appropriateness of health care services." MCL 550.1903(f).

Appellant contends that "the record showed that [she has] severe sleep apnea and hyperlipidemia, conditions which are exacerbated by obesity. These are clearly medical issues, not contractual issues." Appellee, however, did not deny coverage for Saxenda on grounds that appellant did not have sleep apnea or hyperlipidemia, nor did appellee deny that those conditions could be exacerbated by obesity. Appellee's denial letter to appellant stated, "We can't provide coverage for this drug for the following reasons: The requested medication is excluded from coverage under your drug plan." This has always remained appellee's position—that Saxenda was excluded from coverage under the terms of the insurance policy. This is clearly a contractual issue. As such, the MDIFS Director was authorized by law to review appellant's case without referring it to an independent review organization. See MCL 550.1911(8).[3]

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado

---

[3] In support of her argument for this issue, appellant again directs this Court's attention to the MDIFS Director's decision in Case No. 219329-001, where the director deemed the issue one of medical necessity and referred the case to an independent review organization. As the order in that case explains, however, appellee there "denied the request [for the weight-loss drug] on the basis that its medical criteria were not met." In contrast, in the order here, the MDIFS Director explained that appellee "denied the request on the basis [that] weight loss drugs are excluded under the terms of [appellant's] coverage.