*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FRED LUSTIG,

Plaintiff-Appellee,

v

DEPARTMENT OF HEALTH AND HUMAN
SERVICES, and MICHIGAN CIVIL SERVICE
COMMISSION,

Defendants-Appellants.

UNPUBLISHED
March 12, 2020

No. 346447
Ingham County Circuit Court
LC No. 17-000794-AA

Before: CAMERON, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

Defendants, the Department of Health and Human Services (DHHS) and the Michigan Civil Service Commission (MCSC), appeal by leave granted[1] the circuit court's order reversing the MCSC's order upholding the DHHS's dismissal of plaintiff, Fred Lustig, a DHHS employee. We reverse the circuit court's decision and reinstate the MCSC's order upholding the hearing officer's determination that DHHS properly terminated plaintiff's employment for just cause.

## I. BACKGROUND

Plaintiff's title at DHHS was an "Auditor Manager 13" in the Long Term Care Rate and Reimbursement section and he had worked there since 1997. Plaintiff's duties included reviewing and approving approximately 40 to 80 audit plans from two auditors who reported to him and completing audits on his own relating to long-term care providers in order to determine Medicaid-eligibility and other funding issues.

Plaintiff's first supervisor began to notice problems with his work performance sometime in 2014. Plaintiff's first and second supervisors issued a non-disciplinary "needs-improvement"

---

[1] *Lustig v Department of Health and Human Services*, unpublished order of the Court of Appeals, entered May 20, 2019 (Docket No. 346447).

ratings for May 2014 and 2015, which included a performance review plan from May through August 2015, with ten work objectives plaintiff was required to meet. His second supervisor assessed that plaintiff failed to meet seven of the ten performance objectives. Plaintiff was then issued his first "interim service rating" for the "unsatisfactory" review he received of his prior performance for the period of September to December 2015. This rating also included ten performance objectives.

In October 2015, plaintiff's second supervisor issued plaintiff a non-disciplinary written/formal counseling regarding his errors in and the untimeliness of his work product. In November 2015, plaintiff's second supervisor issued plaintiff a disciplinary written reprimand because he violated a work rule by failing to carry out instructions, work assignments, and was otherwise derelict in the performance of his duties.

Plaintiff was again issued an interim service rating from December 2015 to March 2016 for failing to meet the ten previous performance objectives, and he was assigned 11 objectives for the period. In February and March of 2016, plaintiff's second supervisor issued written reprimands to plaintiff for violation of the same work rule and noted many of the same inaccuracies and untimeliness issues in plaintiff's work performance.

At the conclusion of his second interim ratings period, plaintiff's second supervisor issued plaintiff his final performance rating on March 29, 2016. It identified many of the issues that had been previously highlighted and described how plaintiff had failed to meet the performance objectives placed on him during his ratings period. In other words, it specified in detail the untimeliness of plaintiff's work, the backlog of his assignments, and the errors that had passed through his review. That same day, DHHS dismissed plaintiff.

Plaintiff filed a grievance with the MCSC, which assigned plaintiff a hearing officer. Before the hearing, the hearing officer issued three orders requesting certain documents from DHHS regarding plaintiff's work assignments and the work assignments and objectives of other employees. DHHS did not comply with all of these document requests, claiming that it no longer had access to the documents because they did not exist or were destroyed in the normal course of business prior to the action or because plaintiff had other means to obtain the information he sought. The hearing officer agreed and, thereafter, rejected plaintiff's arguments that the allegations against him could not be proven absent that information. Thus, the hearing officer upheld DHHS's decision to terminate plaintiff.

Plaintiff then appealed to the Employment Relations Board, which issues recommended decisions for the MCSC. The Board rejected plaintiff's arguments and recommended that the MCSC issue a final decision upholding plaintiff's dismissal, which it did.

Plaintiff next appealed to the circuit court. The circuit court reversed the MCSC's final decision, determining that DHHS's failure to produce the requested documents amounted to a procedural due process violation as the MCSC had deprived plaintiff of the ability to present an adequate defense.

This appeal follows.

## II. ANALYSIS

Defendants first argue that the MCSC's determination that the DHHS had just cause to terminate plaintiff was supported by substantial evidence. Second, they argue that plaintiff's due process rights were not violated by DHHS's failure to produce all of the requested documentation because he had the opportunity to be heard and to defend himself by subpoenaing the testimony of other employees to provide the information he sought. In response, plaintiff argues that he was unable to present an adequate defense because he lacked requested documentation regarding his work requirements and objectives in comparison to other similarly situated employees and thus he was denied procedural due process. We agree with defendants.

### A. STANDARD OF REVIEW AND LEGAL STANDARDS

The courts' review of a final decision of the Civil Service Commission is governed by Const 1963, art 6, § 28, *Viculin v Dep't of Civil Serv*, 386 Mich 375, 385; 192 NW2d 449 (1971), which provides that:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record[.]

"This language consists of two standards of review: 'authorized by law,' a minimum standard applicable every time the constitutional provision applies, and 'competent, material, and substantial evidence on the whole record,' applicable only in cases where a hearing is required." *Henderson v Civil Serv Comm*, 321 Mich App 25, 39; 913 NW2d 665 (2017). Thus, "when reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings. This latter standard is indistinguishable from the clearly erroneous standard of review[.]" *Boyd v Civil Serv Comm*, 220 Mich App 226, 234-235; 559 NW2d 342 (1996). "[A] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id*.

A decision is not authorized by law when: (1) it violates a statue or the Constitution; (2) it exceeds statutory authority or the agency's jurisdiction; (3) it is made upon unlawful procedures that result in material prejudice; or (4) it is arbitrary and capricious. *Wescott v Civil Serv Commn*, 298 Mich App 158, 162; 825 NW22d 674 (2012). "This Court adopted this particular formulation of the authorized-by-law standard, in part, because it focuses on the agency's power and authority to act rather than on the objective correctness of its decision." *Henderson*, 321 Mich App at 44 (quotation marks omitted).

Under the substantial-evidence test, "it does not matter that the contrary position is supported by more evidence, that is, which way the evidence preponderates, but only whether the position adopted by the agency is supported by evidence from which legitimate and supportable

inferences were drawn." *McBride v Pontiac Sch Dist*, 218 Mich App 113, 123; 553 NW2d 646 (1996). "The substantial evidence test requires that a decision be supported by evidence that a reasonable person would accept as sufficient." *Cogan v Board of Osteopathic Medicine & Surgery*, 200 Mich App 467, 469-470; 505 NW2d 1 (1993).

Procedural due process imposes "constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment[.]" *York v Civil Serv Comm*, 263 Mich App 694, 702; 689 NW2d 533 (2004). Due process "requires the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quotation marks omitted). This includes the ability to have "the chance to know and to respond to the evidence against him[.]" *Id.* (quotation marks omitted). "Under Michigan law, civil service employees are guaranteed continued employment absent just cause for dismissal. This property interest is sufficient to merit due process protections." *Id.* at 703. "The Civil Service Commission is a constitutional body possessing plenary power and may determine, consistent with due process, the procedures by which a State Civil Service employee may review his grievance." *Viculin*, 386 Mich at 393.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey v Brewer*, 408 US 471, 481; 92 S Ct 2593; 33 L Ed 2d 484 (1972). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v McElroy*, 367 US 886, 895; 81 S Ct 1743; 6 L Ed 2d 1230 (1961). Rather, due process "calls for such procedural protections as the particular situation demands." *Morrissey*, 408 US at 481. "[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Goldberg v Kelly*, 397 US 254, 270; 90 S Ct 1011; 25 L Ed 2d 287 (1970) (internal quotation marks and citation omitted). "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *McElroy*, 367 US at 895.

According to the Civil Service Rules and Regulations, a state agency may discipline an employee for "just cause," which is defined as actions, not limited to: (1) failing to carry out duties and obligations imposed by an agency, a work rule, or the law; (2) conduct "unbecoming a state employee"; or (3) unsatisfactory performance or service. Civ Serv R 2-6.1(a) and (b). Agencies are to "use corrective measures and progressive discipline[,]" but have the "discretion to impose any penalty, up to and including dismissal, provided the penalty is not arbitrary and capricious." Civ Serv R 2-6.1(d). An employee who is disciplined is entitled to appeal that discipline to the MCSC and argue it was imposed without just cause. Civ Serv R 8-2.2(c). In those cases, where an employee is alleging that discipline lacked just cause, the MCSC places the burden of proof on the appointing authority to "prove by a preponderance of the evidence that it had just cause to discipline the grievant." Civ Serv Reg 8.01(4)(H)(3)(a). If the appointing authority meets that burden, "a hearing officer can only alter the discipline imposed if the grievant proves by a preponderance of the evidence that the particular discipline imposed (1) violated a [MCSC] rule or regulation, (2) violated an agency work rule, or (3) was arbitrary and capricious." Civ Serv Reg 8.01(4)(H)(3)(b).

## B. DISCUSSION

We first conclude that the circuit court erred in determining that plaintiff's procedural due process rights were violated by DHHS's failure to produce the requested documentation regarding his workload and other employees' workloads. Defendants had procedural safeguards in place that provided plaintiff with due process. Defendants provided plaintiff with the supporting documentation for his disciplinary actions and gave him an opportunity to challenge the veracity of that information and to examine and cross-examine that evidence during a hearing and an appeal. The record overwhelmingly demonstrates that plaintiff was aware of the basis for DHHS's progressive discipline regarding his work performance and ultimate dismissal, and that he had ample opportunity to confront and refute this evidence. Indeed, plaintiff admitted that the records that DHHS produced were an accurate reflection of his work, and, therefore, production of additional documents pertaining to plaintiff's work and workload would not have impacted the veracity of the documentation DHHS provided. Thus, plaintiff had a meaningful opportunity and time to be heard as well as to examine and know the evidence against him. *York*, 263 Mich App at 702. As this is all due process requires, the circuit court clearly erred when it imposed the heightened requirement of mandating DHHS to produce all of the documentation that plaintiff had requested, even those documents that the record demonstrates that, in part, DHHS did not have access to. *Id.*; *Boyd*, 220 Mich App at 234-235.

Additionally, DHHS's failure to produce documents relating to plaintiff's coworkers did not violate due process because, even absent such documents, plaintiff could present an adequate defense. The agency determined, in part, that DHHS was not required to produce the documents at issue because the information could be ascertained through other means. We find no reason to disturb this finding. *McBride*, 218 Mich App at 123. There is no indication that plaintiff was not permitted to subpoena any witness he wanted, including other auditor supervisors, to testify about their workload or that his right to cross-examine on this issue was improperly limited. The Civil Service Regulations provide a procedure for requesting and issuing such subpoenas and plaintiff failed to fully utilize this procedure when mounting his defense. See Civ Serv Reg 8.01(4)(F). Indeed, plaintiff elicited some evidence regarding his argument that his objectives were disproportionate to others, and his argument was still rejected by the MCSC. Again, we have no reason to disturb this factual finding. *McBride*, 218 Mich App at 123. Moreover, as the Board and hearing officer's decisions noted, plaintiff seems to misunderstand the difference between his objectives and his work assignments. Thus, even if plaintiff was correct that the number of objectives assigned to him during his review process were unreasonable, he did not refute the evidence that his actual work assignments remained unchanged during the review process. Plaintiff also had the ability to cross-examine his supervisor about how his supervisor's workload compared to plaintiff's. Thus, the record and the MCSC's rules and regulations belie plaintiff's contentions that he was not given the opportunity to present an adequate defense without receiving all of the documentation that he had requested.

And, to the extent that it is at issue on appeal, we agree with the circuit court and the agency that there is substantial evidence that DHHS demonstrated just cause for plaintiff's termination by a preponderance of the evidence. Even as the circuit court expressed concern that plaintiff was not able to compare his workload to the workload of others similarly situated, which impacted his ability to defend against DHHS's allegations, it indicated that MCSC's determination that just cause had been demonstrated satisfied the substantial evidence test. We also conclude that the just

cause determination was supported by substantial evidence. In fact, DHHS provided overwhelming evidence that plaintiff failed to perform his work tasks accurately and timely despite having multiple opportunities to correct his deficiencies. Civ Serv R 2-6.1(a), (b), and (d). Indeed, as the hearing officer noted, plaintiff admitted that the information DHHS had compiled about his work performance was accurate. And the annual plans and performance objectives of other employees is simply not relevant to the issue of plaintiff's documented failure to meet the objectives set for him. Stated otherwise, plaintiff's performance as compared to the work performance of others similarly situated does not shed light on the pertinent just-cause determination of whether plaintiff met the requirements set for him. There was substantial evidence that DHHS met its initial burden of demonstrating just cause, and thus, the MCSC properly shifted the burden to plaintiff to demonstrate that it should alter DHHS's discipline against him. *Cogan*, 200 Mich App at 469-470.

Simply put, the record belies plaintiff's contention that he was not afforded a fair opportunity to present an adequate defense without receiving all of the documentation that he had requested. Applying the wrong legal standards, the circuit court erred when it determined plaintiff's due process rights were violated and reversed the MCSC's final decision, which was not contrary to the law and was supported by substantial evidence. Accordingly, we reverse the circuit court's order and reinstate the MCSC's decision upholding the hearing officer's determination that DHHS had just cause to terminate plaintiff's employment.

Reversed.


/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Anica Letica