# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM R. HENDERSON AND ALL
OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellees,

v

CIVIL SERVICE COMMISSION, and
DEPARTMENT OF CORRECTIONS,

Defendants-Appellants.

UNPUBLISHED
June 29, 2017

No. 332314
Ingham Circuit Court
LC No. 15-000645-AA

Before: TALBOT, C.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

Defendants, Civil Service Commission (CSC) and Department of Corrections (DOC), appeal by leave granted the circuit court's order of March 14, 2016, which reversed the CSC's final decision affirming position classification decisions made by a technical review officer. The trial court's order also reversed the technical review officer's decisions and affirmed the positions' former classifications. For the reasons stated below, we reverse the circuit court's ruling and reinstate the CSC's decision.

## I. FACTS AND PROCEEDINGS

On April 1, 2012, the DOC eliminated approximately 2,415 resident unit officer (RUO) positions and 57 corrections medical unit officer (CMUO) positions. The persons in those positions were able to "bump" into newly created corrections officer (CO) and corrections medical officer (CMO) positions respectively. The employees performed the same duties as they had in their former positions, but for a lower rate of pay. Their union, the Michigan Corrections Organization (MCO), filed a grievance on their behalf, alleging that the DOC did not eliminate the RUO and CMUO positions for reasons of administrative efficiency.[1] The MCO claimed

---

[1] Michigan's Constitution requires the Commission to classify positions in the classified service according to their respective duties and responsibilities. Const 1963, art 11, § 5. The appointing authorities—here, the DOC—may create or abolish positions for reasons of administrative efficiency without the approval of the Commission. *Id*.

instead that the DOC was facing budget cuts and could not directly reduce employees' pay because of collective bargaining agreements that specified the rates of pay for RUOs and CMUOs. However, the DOC could achieve the same savings by abolishing the RUO and CMUO positions and reassigning employees to newly created positions with lower classifications and lower rates of pay.

*Classification Study*

The parties agreed to hold the grievance in abeyance while the Commission's Office of Classifications, Selections and Compensation (OCSC) undertook a classification and compensation study to determine whether the new positions were correctly classified as CO and CMO rather than RUO and CMUO respectively. The classification study involved desk audits of approximately 120 positions by eight classification experts over several months, encompassing all major DOC facilities. The OCSC compared the job duties for an RUO with those of a CO, eventually focusing on the occurrence and frequency that RUOs performed duties related to participating in a treatment team in a housing facility, preparing reports related to treatment team determinations, and duties involving delivering medications to prisoners. The OCSC then reviewed the Desk Audit Findings, reporting in its classification study that when the employees previously classified as RUOs were "asked whether they had served as a member of a treatment team before April 2012, the majority of employees said that they had not." The OCSC further found that "the supervisors viewed most positions in the housing units as participating in treatment teams," with examples including "providing general input on prisoner behavior, filing paperwork for psychological referrals and running training sessions." The OCSC also reported that the appointing authority (DOC) indicated that the RUO's increased "involvement in "treatment programs . . . has never developed as was initially envisioned."

The OCSC concluded that

[w]hile the [RUO and CO] positions . . . do have different duties and those inside the unit may have comparatively more treatment team, reporting, and medication duties, the statements of employees, supervisors, and the appointing authority have not provided evidence that the housing unit positions are performing sufficient duties to make the RUO classification the best fit.

The OCSC then compared the job duties for the CMUO and CMO positions and concluded that the "classifications are essentially differentiable by the level of therapeutic care to be provided. The CMUO is intended to provide more direct and specialized care while the CMO delivers routine care in the course of traditional custody-focused duties." The OCSC found that "[a] review of position descriptions for newly created CMO positions" showed "the primary duties for the CMO positions are security related, which is consistent with the statement by the appointing authority that, as with the RUO, the envisioned duties of care provision never materialized for the abolished CMUO positions." The OCSC concluded that, "[g]iven the lack of specific required medical background for the newly created CMO positions and the lack of focused medical duties, their continued classification as CMOs is determined to be appropriate."

*Technical Review Decision*

In October 2013, the MCO filed a "Technical Classification Complaint" on behalf of plaintiffs in the CSC's Office of Technical Complaints requesting the restoration of all abolished RUO and CMUO positions as well as lost pay and other benefits experienced resulting from the action. Plaintiffs took issue with the study's finding that the majority of the former RUOs interviewed did not answer affirmatively when asked if they participated in a treatment team. Plaintiffs noted that the first job duty for the RUO position states as follows:

> Participates as a member of a treatment team in determining the classification, reclassification, parole eligibility, counseling needed, minor disciplinary procedures, and treatment programs for each prisoner in the housing unit. [Attachment to technical classification complaint, p 24.]

Plaintiffs asserted that the majority of employees responded that they did perform the specific tasks listed above, and the survey only showed that the former RUOs did not understand the meaning of the term "treatment team" when questioned. Plaintiffs maintained that a majority of the former RUOs would have responded that they participated in a treatment team had that term been defined in accordance with the job duty quoted above. Plaintiffs provided an affidavit from Michael Green, a former RUO, who said he was "very uncertain how to respond" to the treatment team question because "I thought they could be referring to mental health treatment." Green, referencing the job duty quoted above, stated, "If that is the definition of a treatment team then I am certainly a member. These are things that I do all the time. These are the things that other Housing Unit Officers do all the time." Plaintiffs also maintained that the results of the desk audits relating to the abolished CMUO positions showed that the employees previously classified as CMUOs performed and continued to perform the work described in the CMUO position description.

After reviewing the entire record, the technical review officer (TRO) found the newly created positions properly classified as COs and CMOs. The TRO acknowledged that duties within the housing units are different from duties outside those units, but concluded that different duties did not necessarily mean different classifications, reasoning as follows:

> The DOC's assignment of duties is most consistent with the CO and CMO classifications. The audit results indicated that the duties of the majority of employees surveyed lacked a focus consistent with classifications as RUOs or CMUOs, since as an aggregate they have a stronger emphasis on custody than on treatment. The primary role of the affected officers is to provide custody within a housing unit. Their responsibility included reporting to the health care professionals regarding the behavior of prisoners. The professionals on the treatment team decide what treatment will be provided to each prisoner, and the officers perform their portion of the planned treatment.

*Employment Relations Board and CSC's final decision*

In December 2014, plaintiffs applied for leave to appeal the technical review decision to the Employment Relations Board (ERB), arguing that the TRO made numerous erroneous

findings and ignored evidence and arguments favorable to their position. The ERB recommended that the CSC deny plaintiffs' application. The ERB reiterated that most of the former RUOs did not say that they were members of a treatment team nor demonstrate significant participation in the preparing of reports and delivering medication. With regard to the CMUOs, the ERB found that the record did not demonstrate that they provided the type of direct therapeutic intervention or specialized health care to prisoners that was expected of CMUOs. The ERB concluded as follows:

> Because the affected employees did not significantly perform the specialized duties described in the [RUO] or [CMUO] job specifications, they cannot be properly classified as Resident Unit Officers or Corrections Medical Unit Officers. The duties that the new position descriptions and the employees themselves described are most consistent with the [CO] and [CMO] classes. The Board finds no reversible error in the [TRO's] decision.

On June 12, 2015, the CSC approved the ERB's decision and adopted it "as the final decision of the civil service commission in this matter."

### *Circuit Court*

Plaintiffs next appealed the CSC's final decision in the circuit court, arguing as they had before the TRO and the ERB. In response, defendants argued that under Const 1963, art 6, § 28, the circuit court's review was limited to whether the decision was "authorized by law." They argued that the competent, material, and substantial evidence standard, although also found in Const 1963, art 6, § 28, did not apply because the CSC had not authorized a contested hearing to evaluate technical classification complaints. Defendants argued that the CSC's decision adhered to the Constitution and fell within the CSC's authority and, therefore, was authorized by law. Defendants further contended that, in light of the method employed in analyzing the issue, and the multiple layers of review, the CSC's final decision could not properly be characterized as arbitrary and capricious. Defendants argued that it would be inappropriate to consider "the evidentiary support" for the CSC's decision and that a "rational basis" supported both of its classification determinations.

Plaintiffs replied that Const 1963, art 6 § 28 only set the minimum standard of review, and that MCL 24.306 of the Administrative Procedures Act (APA), MCL 24.201 et seq., provides that an administrative agency's decision must be set aside if it is not supported by competent, material, and substantial evidence. Plaintiffs argued that the decision "must be set aside" even under the arbitrary and capricious standard because "there was *no* evidence to support the Commission's decision."

The circuit court heard oral argument on February 17, 2016, and issued a written opinion and order on March 14, 2016. The court first determined the applicable standard of review, reasoning as follows:

> Defendants argue that because a hearing is not required in this case, this Court's review is limited to a determination of whether the Commission's final decision was authorized by law. However, this Court notes that Article VI,

-4-

Section [2]8 requires such a determination as a *minimum* standard of review. *Viculin v Dept of Civil Service*, 386 Mich 375, 392; 192 NW2d 449 (1971) examined the issue of the standard of review and found that the competent, material, and substantial standard of review was to be applied to final decisions of the Commission, without differentiating on the issue of whether a hearing was being held. Furthermore, the Commission itself sent the Appellants in this case a notice stating that the decision is subject to review under MCR 7.117 and MCL 24.301-24.306; the standards of review contained in MCL 24.306 were included in the Commission's notice. Therefore the standard of review requires this Court to ascertain whether the Commission's final decision was authorized by law, whether it was arbitrary and capricious, and whether it was supported by competent, material, and substantial evidence on the whole record.

Next, the court addressed the TRO's determination that the former RUOs were properly classified as COs, finding that the CSC had "reassessed" and "affirmed" the "RUO classification" in 1983, 1996, and 2006. The court noted that "[t]he primary difference that the TRO relied upon between the RUO and the CO positions appears to be whether the position participates as part of a rehabilitative treatment team." The court found "that most of the former RUOs who said they were not part of a treatment team understood the term 'treatment team' to refer to physical or mental health treatment teams, rather than rehabilitative teams," and that "[t]he supervisors of the former RUOs almost all identified the RUOs as part of a treatment team." The court reasoned as follows:

The TRO relied on flawed and inconclusive findings supported by MDOC statements, and while the MDOC's statements could and should have been taken into account, the contradictions between these statements and the confusing results of the classification study, which appears to have purposefully clouded the issue of what a treatment team is and who was considered part of it, cannot be held to provide competent, supported, or material evidence on the whole record. . . .

The court opined that the TRO's decision was "simply an exercise of will in an attempt to support the MDOC's effective reclassification of the RUO positions" and concluded that the decision was also arbitrary and capricious.

The court then found "the decision that the former CMUOs were performing only the work of the CMO was arbitrary and capricious and was not supported by competent, material, and substantial evidence on the record." The court found that the classification study regarding the CMUO position "was even more flawed" because the desk audit interview responses "were apparently not entered, and so the classification study came to its conclusions based solely on job specifications, rather than any reports from former CMUOs or their supervisors." The court found that the interviews "showed that all of the former CMUOs interviewed described themselves . . . as performing the duties set forth in the job specification for the CMUO" and that "there is no evidence to support a conclusion that the former CMUOs were not participating in the work required of the CMUO position." In accordance with its opinion, the circuit court reversed the CSC's final decision, reversed the TRO's decision, and stated that the employees

-5-

formerly classified as RUOs and those formerly classified as CMUOs had been properly classified as RUOs and CMUOs.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"[W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Hanlon v Civil Serv Comm*, 253 Mich App 710, 716; 660 NW2d 74, 79 (2002) (quotation marks and citation omitted).

### B. SCOPE OF REVIEW

The parties correctly agree that Const 1963, art 6, § 28 provides the scope of the circuit court's review of the CSC's decision. See *Boyd v Civil Serv Comm*, 220 Mich App 226, 232; 559 NW2d 342 (1996) (stating the scope of a circuit court's review of a CSC decision is established in Const 1963, art 6, § 28). The parties disagree, however, regarding the limits of the court's scope of review. Defendants argue that because no hearing was required in this case,[2] the circuit court was limited to determining whether the CSC's decision was authorized by law. Defendants also argue that the circuit court exceeded its scope by applying the competent, material, and substantial evidence test. Plaintiffs, on the other hand, contend that the circuit court properly ruled that the competent, material, and substantial evidence scope of review articulated in Const 1963, art 6, § 28, also applied. They contend that the circuit court correctly based its scope-of-review decision on the Supreme Court's holding in *Viculin v Dep't of Civil*

---

[2] Hearings are required where deprivation of a protected property interest is threatened. Civil Service employees have a protected property interest in continued employment, but no such interest in reclassification of their position. *York v Civil Serv Comm*, 263 Mich App 695, 703; 689 NW2d 533 (2004). The Michigan Civil Service Rules authorize hearings in cases involving allegations of unfair labor practices, grievances, labor-relations appeals, and certain other appeals (e.g., where a technical review officer determines that a hearing is necessary to resolve material questions of fact). Under the Administrative Procedures Act, MCL 24.201 *et seq.*, parties to a contested case must be given the opportunity to be heard. MCL 24.271(1). A " 'contested case' means a proceeding, including rate-making, price-fixing, and licensing, in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing." MCL 24.203(3). The CSC is not considered an "agency" for purposes of the APA. MCL 24.203(2).

*Serv*, 386 Mich 375; 192 NW2d 449 (1971), and, pursuant to MCR 7.117 and MCR 7.119,[3] the applicability of the standard of review provided by MCL 24.306[4] of the APA. Plaintiffs assert that defendants' position is only supported by dicta, and that *York v Civil Serv Comm*, 263 Mich App 694; 689 NW2d 533 (2004), establishes that this Court requires application of the substantial evidence test, even where there has been no hearing.

Upon a careful review of the applicable law, we conclude that defendants' position is correct. Const 1963, art 6, § 28, provides in relevant part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. . . .

This language consists of two standards of review: "authorized by law," a minimum standard applicable every time the constitutional provision applies, and "competent, material, and substantial evidence on the whole record," applicable only in cases where a hearing is required. See *Attorney General v Mich Pub Serv Comm*, 206 Mich App 290, 295-296; 520 NW2d 636 (1994) (stating that, because a settlement agreement did not involve a rate increase that would have triggered the contested case hearing procedures of the APA, no hearing was required, and the substantial evidence portion of the article 6 standard of review did not apply); see also LeDuc, Michigan Administrative Law, § 9:2 (2015 ed), p 614.

---

[3] As will be discussed later, MCR 7.117 mandates that review of the Commission's decisions must comply with MCR 7.119, which pertains to appeals from agencies governed by the APA.

[4] MCL 24.306 provides in relevant part:

> Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
>
> * * *
>
> (d) Not supported by competent, material and substantial evidence on the whole record."

Numerous binding authorities establish that when a hearing is not required, courts review an agency decision only under the "authorized by law" standard, and not also the substantial evidence test.[5] See, e.g., *Ross v Blue Care Network of Mich*, 480 Mich 153, 164; 747 NW2d 828 (2008) ("Decisions of an administrative agency or officer, in cases in which no hearing is required, are reviewed to determine whether the decisions are authorized by law."); *Brandon Sch Dist v Mich Educ Special Servs Ass'n*, 191 Mich App 257, 263; 477 NW2d 138 (1991) ("Where no hearing is required, *it is not proper* for the circuit court or this Court to review the evidentiary support of an administrative agency's determination. Judicial review . . . is *limited* in scope to a determination whether the action of the agency was authorized by law." (Emphasis added)); *Wescott v Civil Serv Comm*, 298 Mich App 158, 161; 825 NW2d 674 (2012) (adopting the assertions in *Ross* and *Brandon*). In light of the foregoing, the circuit court adopted incorrect legal principles when it reviewed the CSC's decision for evidentiary support that was competent, material, and substantial.

Plaintiffs argue that *Viculin* supports the court's application of both the authorized by law and the competent, material, and substantial evidence standards to its review of the CSC's decision, but their argument is unpersuasive. The *Viculin* Court held that Const 1963, art 6, § 28 did not guarantee or permit review de novo of a final decision by the CSC affirming an employee's "dismissal from state service" after a "full hearing." *Viculin*, 386 Mich at 381-384. In so holding, the Court stated, "[t]he scope of review is that stated by the Constitution, 'whether the same are supported by competent, material and substantial evidence on the whole record.' " *Id*. at 392. Plaintiffs contend that, because "the Supreme Court did not rely on the sentence in the constitutional article requiring a substantial evidence test for cases where a hearing was held," a circuit court's application of the competent, material, and substantial evidence standard does not rest on "the presence or absence of a hearing." However, the issue in *Viculin* was the method of review, not the scope of review. *Viculin*, 386 Mich at 392. The *Viculin* Court made no determinations about the scope of review where a hearing was not required, which is the issue in the case at bar. As the Supreme Court recently explained, to derive a rule of law from the facts of a case "when the question was not raised and no legal ruling on it was rendered, is to build a syllogism upon a conjecture." *People v Seewald*, 499 Mich 111, 121 n 26; 879 NW2d 237 (2016). Thus, the reliance of plaintiffs and the circuit court on *Viculin* for the proposition that both the authorized by law and substantial evidence standards applied to cases where no hearing was required was misplaced.

Plaintiffs' argument that the APA's competent, material, and substantial evidence standard, MCL 24.306(d), applies to this case through the mandate of MCR 7.117 and the

---

[5] This Court has stated that Const 1963, art 6, § 28 establishes a minimum standard of review without forbidding a more stringent review. *Palo Group Foster Care, Inc v Mich Dep't of Soc Servs*, 228 Mich App 140, 145; 577 NW2d 200 (1998). Plaintiffs argue along the same lines. However, plaintiffs provide no authority that would allow a circuit court sua sponte to apply a stricter standard, and this Court indicated in *Palo* that it was the role of the Legislature to provide for stricter review. *Id*.

provisions of MCR 7.119(H) is also unavailing. MCR 7.117 directs compliance with MCR 7.119, which applies to appeals governed by the APA, and MCR 7.119(H) provides:

> The court may affirm, reverse, remand, or modify the decision of the agency and may grant further relief as appropriate based on the record, findings, and conclusions.
>
> (1) If the agency's decision or order is not supported by competent, material, and substantial evidence on the whole record, the court shall specifically identify the finding or findings that lack support.
>
> (2) If the agency's decision or order violates the Constitution or a statute, is affected by a material error of law, or is affected by an unlawful procedure resulting in material prejudice to a party, the court shall specifically identify the agency's conclusions of law that are being reversed.

Plaintiffs contend that MCR 7.119(H) summarizes the APA standard of review set forth in MCL 24.306.

Prior to the 2012 adoption of MCR 7.117 and MCR 7.119, 490 Mich at clxxxvii, MCR 7.104(C) provided that appeals from the CSC were governed by the provisions for appeals from administrative agencies in the APA. Interpretations of MCR 7.104(C) make clear that the APA provides appellate courts with the procedure for reviewing appeals from civil service decisions, but not the scope of review. See, e.g., *Hanlon v Civil Serv Comm*, 253 Mich App at 725 n 6 (noting that MCR 7.104(C) regards the appellate *process*); *Womack Scott v Dep't of Corrections*, 246 Mich App 70, 79; 630 NW2d 650 (noting that the APA provides the *means* to seek review of a CSC decision); see also LeDuc, Michigan Administrative Law,§ 9:4 (2015 ed), p 620.

Nothing in the plain language of MCR 7.117 or MCR 7.119 suggests that this distinction between the procedure for review and the scope of review has been abandoned, and that MCR 7.117 and MCR 7.119 adopted the APA's scope of review. See *Haliw v City of Sterling Hts*, 471 Mich 700, 704-705; 691 NW2d 753 (2005) (indicating that interpretation of a court rule begins with the plain language). Rather, MCR 2.119(H) merely instructs the court to clearly identify its reason for reversal of a CSC's decision, regardless of whether it employs the competent, material, and substantial evidence scope of review, MCR 7.119(H)(1), or the authorized by law scope of review, MCR 7.119(H)(2).[6]

---

[6] Furthermore, this Court has continued to expect circuit courts to review CSC decisions in accordance with the standards of review set forth in the constitutional provision after adoption of MCR 7.117 and MCR 7.119, indicating that the court rules at issue did not adopt the APA's standard of review. See, e.g., *Dine v Grand Civil Serv Comm*, unpublished opinion per curiam of the Court of Appeals, issued August 14, 2014 (Docket No. 315773), p 1-2; *Hammond v Civil Serv Comm*, unpublished opinion per curiam of the Court of Appeals, issued July 16, 2013

Recently, this Court engaged in an extended discussion of the correct scope of review for agency decisions in *Wescott v Civil Serv Comm*, 298 Mich App 158, 162; 825 NW2d 674 (2012), indicating that where a case did not require a hearing, agency "[decisions] are reviewed to determine whether the decisions are authorized by law." Quoting *Ross*, 480 Mich at 164, citing Const 1963, art 6, § 28. Plaintiffs contend that this Court's statement in *Wescott* is dicta that had nothing to do with the Court's decision. However, in *Wescott*, the Court necessarily had to determine the scope of review and proceed to examine whether the circuit court misapplied the "authorized by law" standard. *Wescott*, 298 Mich App at 162-163. Further, the Court acknowledged that agency findings are generally reviewed under "the substantial evidence test" but reasoned that this standard of review would be inappropriate because a hearing was not required in that case. *Id*. at 161-162. Moreover, in a footnote, the Court referenced "the inapplicability of the substantial-evidence test in cases in which no hearing was required . . . ." *Id*. at 163 n 4. Thus, this Court's statements in *Wescott* were not dicta, and they echoed the law firmly established by the constitutional provision and caselaw interpreting it.

In conclusion, we agree with defendants that the proper scope of review for agency cases where no hearing is required is the authorized by law standard, and that the circuit court erred by reviewing the CSC's decision to determine whether competent, material, and substantial evidence supported it. Furthermore, for the reasons stated above, we reject plaintiffs' interpretation of MCR 7.117 and MCR 7.119(H) as confirming the applicability of the APA's standards of review to CSC decisions.

C. AUTHORIZED BY LAW

The circuit court also applied the authorized-by-law standard, ruling that the CSC's decision was arbitrary and capricious, and therefore not authorized by law. Defendants contend that in so ruling, the court exceeded its scope of review under the authorized-by-law standard by reweighing the evidence, making credibility decisions, and substituting its judgment for the CSC's. We agree.

An agency decision "in violation of a statute, in excess of the statutory authority or jurisdiction of the agency, made upon unlawful procedures resulting in material prejudice, or is arbitrary and capricious" is not authorized by law. *Brandon Sch Dist*, 191 Mich App at 263. This Court adopted this particular formulation of the authorized by law standard, in part because "it focuses on the agency's power and authority to act rather than on the objective correctness of its decision." *Northwestern Nat'l Cas Co v Ins Comm'r*, 231 Mich App 483, 489; 586 NW2d 563 (1998). "A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott*, 298 Mich App at 162, citing *City of Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54 63-64; There is no question, and the parties do not dispute, that Michigan's Constitution authorizes the CSC to undertake the classification action at issue here. Const 1963, art 11, § 5 provides in relevant part:

(Docket No. 309704), p 3. Unpublished opinions of this Court have no precedential effect, but may be considered persuasive. MCR 7.215(C)(1).

The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.

Not only does Michigan's Constitution authorize the CSC to classify civil service positions, but the CSC is vested with plenary powers in its sphere of authority. *Coalition of State Employee Unions v State*, 498 Mich 312, 329; 870 NW2d 275 (2015); *AFSCME Council 25 v State Employees' Retirement Sys*, 294 Mich App 1, 15; 818 NW2d 337 (2011)("That is, the Civil Service Commission has absolute power in its field."). Thus, the CSC's decision does not exceed its authority, nor have plaintiffs suggested that it violates a statute. *Brandon Sch Dist*, 191 Mich App at 263. Although plaintiffs contend that "treatment plan" should have been defined to eliminate some employees' confusion about what the term meant, plaintiffs have provided no evidence—nor do they argue—that the procedures used in the classification study or in the TRO's analysis of the classifications were unlawful. *Id*.

The circuit court determined that the CSC's decision was not authorized by law because it was arbitrary and capricious. The court based its ruling on its finding that the record evidence did not support the TRO's decision. In the circuit court's view, the TRO predicated its decision regarding employees formerly classified as RUOs on study results that were flawed and internally inconclusive because they were derived in part from responses to intentionally misleading questions, and its decision regarding employees formerly classified as CMUOs on job specifications rather than on reports from former CMUOs or their supervisors.

Plaintiffs' argument with regard to this issue is little more than a reassertion of their contention that the court's proper scope of review extended to a thorough review of the evidentiary record, even in the absence of a hearing. Plaintiffs stress that MCR 7.101 through 7.115 apply to appeals from the CSC, and that appeals to the circuit court are heard on the original record, MCR 7.109, which "includes all documents, files, pleadings, testimony, and opinions and orders[,]" MCR 7.210(A)(1). If the entire record must be transmitted to the circuit court, plaintiffs reason, then it must be that the circuit court is allowed review it, without regard to whether a hearing was required.

Plaintiffs' reasoning runs counter to the scope of review provisions in Const 1963, art 6, § 28, as well as to the numerous binding authorities already mentioned that limit a circuit court's review of an agency decision in cases where no hearing is required to determining whether the decision is authorized by law. The law is clear that, in a case where a hearing was not required, it simply is not "proper for the circuit court or this Court to review the evidentiary support of [the] administrative agency's determination." *Wescott*, 298 Mich App at 162, quoting *Brandon Sch Dist*, 191 Mich App at 263. Here, the circuit court reweighed the evidence, essentially giving less weight to the results of the classification study and the statements by the DOC and more weight to the affidavits of employees who said the question about participating in a treatment team confused them, and that they performed the duties in the RUO and CMUO job

specifications. In addition, the circuit court questioned the credibility of the study by suggesting that the highly relevant issue of whether employees participated on a treatment team was "intentionally clouded." Further, the circuit court impermissibly dictated what evidence the TRO should have entertained in making its ruling by noting that it had not taken account of reports from employees formerly classified as CMUOs. See *Wescott*, 298 Mich App at 163 n 4. In addition, the circuit court essentially substituted its judgment for that of the CSC's by concluding that the weight of the evidence supporting the CSC's decision was insufficient to overcome the weight of the evidence to the contrary. None of this is permissible in an authorized-by-law scope of review. See *Brandon Sch Dist*, 191 Mich App at 623. Finally, the circuit court also erred by considering the CSC's prior reviews of the RUO and CMUO positions because they were irrelevant to the study performed in this case, and simply served as evidence to support plaintiffs' argument for reversal of the CSC's decision.

We cannot agree with the circuit court that the CSC's decision was not authorized by law. The CSC exercised its constitutional authority to classify the newly created positions, Const 1963, art 11, § 5, and nothing indicates that the CSC's decision violated a statute or resulted from procedures that were unlawful. Regarding whether the decision was arbitrary and capricious, the CSC predicated its decision on an extensive and detailed classification study, the determining principle of which was to identify the extent to which employees in the newly created positions participated in the treatment-related activities envisioned for the RUO and CMUO positions. The conclusions of the OCSC were subject to multiple layers of review that included an opportunity for plaintiffs to submit additional documentation and express their critique of the study and resulting classification. The CSC's decision came at the end of this process. In light of the foregoing and of our limited scope of review, we cannot say that this decision "lacks an adequate determining principle" or that it "reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance," or that it is "freakish or whimsical." *Wescott*, 298 Mich App at 162.

## III. CONCLUSION

We conclude that the circuit court erred by applying the competent, material, and substantial evidence scope of review to a case where a hearing was not required, and by exceeding the authorized-by-law scope of review by reweighing the evidence, making credibility decisions, and substituting its judgment for that of the CSC. In light of this conclusion, we need not address defendants' remaining issue.

We reverse the circuit court's ruling and reinstate the CSC's decision.


/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Michael J. Kelly

-12-