*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCHINDLER ELEVATOR CORPORATION,

        Appellant,

v

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS,

        Appellee.

UNPUBLISHED
January 17, 2025
9:30 AM

No. 365032
Wayne Circuit Court
LC No. 22-008979-AV

Before: MURRAY, P.J., and BORRELLO and MARIANI, JJ.

PER CURIAM.

In this administrative appeal, appellant, Schindler Elevator Corporation (Schindler), challenges the circuit court's affirmance of a final decision of the Elevator Safety Board (the Board), which is housed within appellee, the Department of Licensing and Regulatory Affairs (LARA). LARA's Elevator Safety Division (the Division) declined to issue to Schindler certificates of operation for eight of its elevators on the basis that they did not comply with a particular safety regulation. Schindler appealed to and requested a variance from the Board. The Board issued a final decision denying the appeal and variance request. Schindler then appealed to the circuit court, which affirmed the Board's decision. Schindler now appeals by leave granted,[1] arguing that (1) the Board misinterpreted the relevant regulation; (2) the Board's decision constitutes an invalid, unpromulgated rule under the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; (3) even if the Board's decision is not a "rule," it is an unlawful interpretive statement; (4) the Board's decision is not supported by substantial evidence; and (5) the Board violated Schindler's procedural due-process rights. We affirm.

---

[1] *Schindler Elevator Corp v Dep't of Licensing and Regulatory Affairs*, unpublished order of the Court of Appeals, entered July 27, 2023 (Docket No. 365032). This Court's order also imposed a limited stay of enforcement of the circuit court's order "pending the resolution of this appeal or further order of the Court."

I.  FACTUAL AND PROCEDURAL BACKGROUND

The Division declined to issue certificates of operation for eight of Schindler's Machine-Room-Less (MRL) elevators on the basis that they did not comply with American Society of Mechanical Engineers Safety Code for Elevators and Escalators A17.1-2010 (ASME Safety Code), Requirement 2.7.5.1.1 (the Requirement), which was adopted by reference as a regulation under former Mich Admin Code, R 408.7003.[2]  The Requirement provides:

> **2.7.5.1. Working Areas in the Car or on the Car Top.**  The requirements of 2.7.5.1.1 . . . shall be complied with if maintenance or inspections of the elevator driving-machine brake, emergency brake, elevator motion controller, or motor controller are to be carried out from inside the car or from the car top.
>
> **2.7.5.1.1.**  If maintenance or inspection of the elevator driving-machine brake or an emergency brake, or of elevator motion controllers or motor controllers from inside the car or from the car top could result in unexpected vertical car movement, a means to prevent this movement shall be provided. . . .[3]

As made clear in Section 2.7.5.1.2 of the ASME Safety Code, the "means" mentioned by the Requirement must be, among other things, "independent of the elevator driving-machine brake, emergency brake, motion controller, and motor controller[.]"  See Mich Admin Code, R 408.7003.

The Requirement thus mandates, in relevant part, that an elevator must be equipped with an independent means to prevent unexpected vertical car movement if maintenance or inspection of certain parts of the elevator could result in such movement.

Broadly, Schindler maintains that its MRL elevators comply with the Requirement because they "incorporate a safety circuit and design that causes the immediate removal of power to the elevator's hoist motor upon inspection and maintenance" and "sets the brake and emergency brake to hold the car in place[,]" making unexpected car movement during inspection or maintenance of the relevant components "not possible."  According to Schindler, the design of the elevator eliminates the need to provide an additional "means" to prevent unexpected movement of the elevator such as a car-blocking device, which is a separate mechanism that can be installed on an elevator to prevent movement.  The Division previously agreed that Schindler's MRL elevators complied with the Requirement and granted certificates of operation for the elevators dating back to 2014.

---

[2] Rule 408.7003 was amended effective June 27, 2023.  The parties do not dispute that the former version of the rule governs the instant appeal.

[3] For purposes of the Requirement, "maintenance" is defined as "a process of routine examination, lubrication, cleaning, and adjustment of parts, components, and/or subsystems for the purpose of ensuring performance in accordance with the applicable Code requirements."  ASME Safety Code, Section 1.3, p 12 (2010).

In 2022, the Division declined to issue certificates of operation for eight of Schindler's MRL elevators, finding that the design did not eliminate the possibility of unexpected vertical car movement during maintenance or inspection and the elevators thus needed, but lacked, an independent means to prevent such movement. The Division instead issued temporary certificates of operation for the eight elevators at issue. After a series of communications between representatives of Schindler and the Division regarding the Division's decision and rationale, Schindler submitted an appeal and variance request to the Board via letter.[4] In the letter, Schindler set forth a detailed explanation of its position that the MRL elevators complied with the Requirement. In response, the Division's Code and Inspector Supervisor, Craig LaLonde, submitted a position statement to the Board, setting forth the Division's reasoning for declining to issue the certificates of operation.

The Board took up Schindler's variance request and appeal at an open meeting held on June 21, 2022. At the meeting, Schindler was represented by counsel and presented its position that the design of the MRL elevators eliminated the possibility of unexpected vertical car movement, complied with the Requirement, and had not resulted in any safety issues. LaLonde presented the Division's position that unexpected vertical car movement was possible despite the design of the MRL elevators and the elevators lacked the necessary independent means to prevent it. LaLonde explained that certain Division personnel had previously found that Schindler's MRL elevators complied with the Requirement, but "a growing sentiment among union employees and Division personnel required the design to be reexamined[.]"[5] The Board also heard from representatives of the International Union of Elevator Constructors (IUEC), who spoke in support of the Division's position.

After hearing from the parties, the Board voted during the meeting to deny Schindler's appeal and variance request "due to a lack of a level of safety." The Board sent Schindler a brief, written decision soon thereafter which was titled "Final Decision of the Elevator Safety Board" and which stated, in pertinent part, that "it is the final decision of the Elevator Safety Board to deny the variance request for relief from the requirements/appeal to [sic] violation of Section 2.7.5.1.1 of the 2010 edition of the ASME A17.1 Safety Code for Elevators and Escalators." Schindler then appealed to the circuit court, which affirmed the Board's final decision. This appeal followed.

## II. STANDARD OF REVIEW

---

[4] Among other things, the Board is empowered "to grant exceptions or variations" from regulatory requirements when "it is clearly evident that exceptions or variations are necessary to prevent undue hardship or when existing conditions prevent compliance with the literal requirements, if the board believes reasonable safety will be secured by granting the exception or variation." MCL 408.808(1)(c). The Board is also empowered to "hear and decide appeals . . . when requested to do so" by a person or entity "aggrieved by an order or act of the department, or its authorized representatives[.]" MCL 408.808(1)(d).

[5] The Board meeting was not transcribed. This quoted language is from the proposed statement of facts that defendant submitted to the circuit court regarding what was said at the meeting.

"This Court's review of a circuit court's ruling on an appeal from an administrative decision is limited" to whether the court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Buckley v Prof Plaza Clinic Corp*, 281 Mich App 224, 231; 761 NW2d 284 (2008) (quotation marks and citation omitted). "Whether a circuit court applied the appropriate standard of review is a question of law that this Court reviews de novo." *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 87; 832 NW2d 288 (2013).

As to the circuit court's scope of review, our Constitution provides:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. [Const 1963, art 6, § 28.]

As this Court has explained, " 'When the agency's governing statute does not require the agency to conduct a contested case hearing, the circuit court may not review the evidentiary support underlying the agency's determination' "; instead, " '[j]udicial review is limited in scope to a determination whether the action of the agency was authorized by law.' " *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 336 Mich App 490, 499; 971 NW2d 46 (2021), quoting *Natural Resources Defense Council*, 300 Mich App at 87-88. It is undisputed that, in this case, no contested-case hearing was required. See MCL 408.808(3). Accordingly, judicial review is limited to determining whether the Board's final decision was "authorized by law."

"An agency decision is not authorized by law if it violates constitutional or statutory provisions, lies beyond the agency's jurisdiction, follows from unlawful procedures resulting in material prejudice, or is arbitrary and capricious." *Dearborn Hts Pharmacy v Dep't of Health & Human Servs*, 338 Mich App 555, 559; 980 NW2d 736 (2021). The authorized-by-law standard "focuses on the agency's power and authority to act rather than on the objective correctness of its decision." *Henderson v Civil Serv Comm*, 321 Mich App 25, 44; 913 NW2d 665 (2017). In applying this standard, "[c]ourts review de novo questions of law, including whether an agency's action complied with a statute." *Natural Resources Defense Council*, 300 Mich App at 88.

III. ANALYSIS

As in the circuit court, Schindler raises before this Court a host of challenges to the Board's decision to deny its appeal and variance request. Schindler, however, has failed to show reversible error in the circuit court's rejection of these challenges and affirmance of the Board's decision, as that conclusion did not depend on the application of incorrect legal principles or a misapprehension or gross misapplication of the substantial-evidence test. *Buckley*, 281 Mich App at 231. While the circuit court erred in deeming the substantial-evidence test applicable to the Board's decision,

that error only served to subject the Board's decision to a higher level of scrutiny than necessary, and provides no grounds for awarding relief to Schindler.

## A. THE REQUIREMENT

Many of Schindler's challenges on appeal pertain to whether the Board properly interpreted and applied the Requirement in denying Schindler's appeal and variance request. We see no basis for relief as to any of these claims.

Schindler first argues that reversal is in order because the Board misinterpreted and improperly rewrote the plain language of the Requirement. "In refusing to issue Schindler certificates of operation on its MRL elevators," Schindler maintains, "the Board has held that the Requirement necessitates car-blocking devices on *all* MRL elevators during *all* inspection and maintenance." According to Schindler, this imposition of "an unconditional and exclusive mandate . . . that all MRL elevators must be equipped with car-blocking devices" is contrary to the Requirement's plain terms because (1) the Requirement only requires "*a* means" to prevent unexpected vertical car movement, and does not specifically require that the means be a car-blocking device; and (2) the Requirement only requires such a means "*if* maintenance or inspection of" specified components of the elevator "could result in unexpected vertical car movement."

The circuit court rejected this line of argument, concluding that "the Board's decision is consistent with the plain language of the Requirement." We see no error, let alone reversible error, in that conclusion.[6] Simply put, the Board's decision does not say or require what Schindler attempts to attribute to it. Through its final decision, the Board denied Schindler's appeal and variance request regarding certificates of operation for eight of its MRL elevators. The decision

---

[6] Schindler argues that the circuit court committed legal error by unduly affording deference to the Board's interpretation of the Requirement, stressing that this is "a purely legal issue" that must be reviewed de novo and without any deference. Caselaw, however, does not bear out Schindler's assignment of error. As this Court has explained,

> We review questions of statutory interpretation de novo. The interpretation of administrative regulations is also a question of law that this Court reviews de novo. However, we generally defer to an agency's administrative expertise in making decisions that fall within the agency's charged area of administration. An agency's interpretation of a statute is entitled to respectful consideration, but it cannot conflict with the plain meaning of the statute. The "respectful consideration" standard provides that an agency's decision ought not to be overruled without cogent reasons. In addition, an agency's interpretation of its own regulation is of controlling weight unless it is plainly erroneous or inconsistent with the regulation. [*Airgas Specialty Prods v Michigan Occupational Safety & Health Admin*, 338 Mich App 482, 495; 980 NW2d 530 (2021) (cleaned up).]

Regardless, we do not see in the circuit court's analysis of this interpretive issue any particular deference to the Board. Nor, for the reasons discussed above, do we think any such deference is necessary in this case to conclude that Schindler's challenge lacks merit.

itself is brief, and we fail to see why it should be read to stand for anything other than a determination that the elevators at issue did not meet, or warrant a variance from, the Requirement's plain terms: namely, that maintenance or inspection of the relevant parts of the elevators at issue could result in unexpected vertical car movement; that, as a result, the elevators needed an independent means to prevent such movement; that the elevators, as designed, lacked such an independent means; and that the Board was not convinced it should grant a variance from that requirement "due to a lack of a level of safety." See MCL 408.808(1)(c) (providing that the Board may grant "exceptions or variations" from regulatory requirements when certain necessary criteria are met, including that "the board believes reasonable safety will be secured by granting the exception or variation"). The Board's decision did not say or require anything contrary to or beyond this, nor did it purport to impose some "unconditional and exclusive mandate" that "necessitates car-blocking devices on *all* MRL elevators during *all* inspection and maintenance." While it certainly may be, for instance, that installation of car-blocking devices would be sufficient to bring the elevators at issue into compliance with the Requirement, the Board's decision did not mention that particular solution (or any other), let alone mandate it to the exclusion of any other solutions Schindler may wish to propose. Schindler may disagree with the Board's conclusion that its elevators, as designed, do not meet the Requirement, but that does not mean the Board disregarded or rewrote the Requirement's terms in reaching that conclusion.

Likewise unavailing is Schindler's complaint that this conclusion departs from the Division's prior approval of Schindler's MRL elevators. In arguing that this too must mean the Board has effectively amended or ignored the terms of the Requirement, Schindler overlooks that: (1) while Division personnel may have previously found Schindler's MRL elevator design consistent with the Requirement, there is nothing to suggest the Board itself was asked to weigh in on that question at any point before the instant appeal and variance request;[7] and (2) regardless, there is no reason why the Board's departure from that prior conclusion must mean that the Board has rewritten or disregarded the terms of the Requirement, rather than simply concluded that the Division's prior application of those terms to Schindler's MRL elevator design was mistaken or

---

[7] Throughout its arguments, Schindler routinely treats the Division, which is a segment of LARA and its staff, as synonymous with the Board. This is not accurate: while housed within LARA, the Board is a statutorily created and defined entity comprising 11 members, one of whom is the director of LARA and the remainder of whom are individuals from designated sectors of society that are appointed by the governor with advice and consent of the senate. See MCL 408.807(1). And as the instant matter reflects, the Board is tasked with, among other things, hearing and deciding appeals from individuals and entities "aggrieved by an order or act of [LARA], or its authorized representatives." MCL 408.808(1)(d).

Similarly, Schindler's arguments often point to the written position statement submitted by the Division to the Board as if it were one and the same as the Board's final decision. Again, however, the Board and the Division are distinct, and the Board's decision does not refer to or purport to incorporate that document or its specific content. Furthermore, even if the Board did rely on the position statement in some manner, we do not see in Schindler's criticisms of that statement grounds to assign reversible error to the circuit court's affirmance of the Board's decision.

out of step with the information now before the Board.[8] In sum, we do not see a basis to conclude that the Board disregarded or rewrote the plain terms of the Requirement in its decision to deny Schindler's appeal and variance request.

Schindler also takes issue with the manner in which the Board applied the Requirement's terms to the elevators in question, but we see no grounds for relief in that regard, either. To start, Schindler characterizes the Board's decision as arbitrary and capricious, pointing again to the Division's prior approval of its MRL elevators as well as to the fact that there have been no reported incidents of unexpected vertical car movement during inspection or maintenance of those elevators. See *Dearborn Hts Pharmacy*, 338 Mich App at 559 ("An agency decision is not authorized by law if it . . . is arbitrary and capricious."). We disagree.

"A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Henderson*, 321 Mich App at 44 (quotation marks and citation omitted). As discussed, the Board, in issuing its final decision, considered whether the elevators at issue complied with the terms of the Requirement or warranted a variance from those terms under the standard set forth in MCL 408.808(1)(c); there is nothing to indicate the absence of an "adequate determining principle." The Board held a meeting at which it heard from representatives of Schindler, the Division, and the IUEC regarding these matters. Schindler presented its position to the Board, including its track record of safety, and the Division and IUEC presented their respective positions, including their views regarding the risk of unexpected vertical car movement posed by the elevators at issue. Schindler criticizes those contrary positions and their underlying support, but it is not the role of this Court to reweigh the evidence or to substitute our judgment for that of the Board. *Henderson*, 321 Mich App at 46-47 (finding that the circuit court erred by reweighing the evidence and substituting the agency's judgment with its own in finding that the agency's decision was arbitrary and capricious); see also *id*. at 46 (explaining that the authorized-by-law review of an agency's decision, which includes whether the decision was arbitrary and capricious, "focuses on the agency's power and authority to act rather than on the objective correctness of its decision").[9] And for the reasons already discussed, the mere fact that

---

[8] Cf., e.g., *Andersons Albion Ethanol, LLC v Dep't of Treasury*, 317 Mich App 208, 214; 893 NW2d 642 (2016) (explaining that "if the Department determines that past allowances were improper under a statute, it is not bound by the same mistake on subsequent determinations," and the fact "[t]hat the Department changed its interpretation . . . does not necessarily mean that its new interpretation is unreasonable" and "was not, in and of itself, a cogent reason to reject the Department's new interpretation"); *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 539; 831 NW2d 255 (2013) ("Plaintiff is not entitled to the continuation of [the Department's prior] misinterpretation.").

[9] Furthermore, we do not find Schindler's criticisms particularly convincing. As noted, Schindler stresses its track record of safety, but we fail to see why that is incompatible with a conclusion that unexpected vertical car movement still "could" occur under the Requirement's specified circumstances—or, for that matter, why the very safety incident that the Requirement's measures are designed to prevent must occur before such measures can be deemed warranted. Similarly,

the Board's decision departs from the approval that certain Division personnel had previously granted to Schindler's elevators does not, in itself, show that the decision was unconsidered or "freakish or whimsical"—nor does anything else in the record suggest as much. Again, Schindler may well disagree with the Board's decision, but we do not see grounds to conclude that it was "arbitrary and capricious" so as to be "not authorized by law." *Dearborn Hts Pharmacy*, 338 Mich App at 559.

Schindler also argues that the Board's final decision was not supported by substantial evidence. As already noted, however, this lies beyond the proper scope of our review; in cases, such as this one, where "the agency's governing statute does not require the agency to conduct a contested case hearing," courts "may not review the evidentiary support underlying the agency's determination," and our review "is limited in scope to a determination whether the action of the agency was authorized by law." *South Dearborn*, 336 Mich App at 499 (quotation marks and citation omitted); see also *Northwestern Nat Cas Co v Ins Com'r*, 231 Mich App 483, 488; 586 NW2d 563 (1998) ("Where no hearing is required, it is not proper for the circuit court *or this Court* to review the evidentiary support of an administrative agency's determination. In such cases, judicial review is not de novo and is limited in scope to a determination whether the action of the agency was authorized by law.") (quotation marks and citations omitted).[10] For the reasons

---

Schindler notes that the Division did not submit to the Board "research, studies, or data that indicate blocking devices would increase public safety," but does not explain why, given the record and issues before the Board, such additional proofs would be necessary for the Board to properly weigh the parties' respective positions and evaluate the elevators' compliance with the Requirement's plain terms. Schindler also impugns the Board's decision as "prompted largely by political pressure," citing LaLonde's explanation to the Board (as summarized by defendant) that "a growing sentiment among union employees and Division personnel" led to the Division's reexamination of the MRL elevators' compliance with the Requirement. But Schindler points to nothing in the record to substantiate its insinuation that this originating sentiment or the Division's ensuing reexamination—let alone the Board's own ultimate decision in this matter—was improperly motivated, rather than informed by due consideration of the Requirement's terms and a genuine concern for worker safety. Simply put, we see nothing in Schindler's arguments that casts meaningful doubt on the validity of the Board's decision or the manner in which the Board reached it.

[10] The circuit court in this case undertook review of the Board's decision under the substantial-evidence test; for the reasons discussed, that was error. The court, however, otherwise correctly upheld the Board's decision, and so the error was harmless. See, e.g., *Natural Resources Defense Council*, 300 Mich App at 89.

Furthermore, we note that, while there is no need to review the circuit court's substantial-evidence analysis, we do not see clear error in it. See *Buckley*, 281 Mich App at 231 (explaining that this Court's review of a circuit court's application of the substantial-evidence test is for whether the court "misapprehended or grossly misapplied the . . . test to the agency's factual findings," which "is synonymous with the clear-error standard of review") (quotation marks and citations omitted). As the court explained, there is evidence to support the conclusion that the elevators at issue, as designed, lacked "a means" to prevent unexpected vertical car movement that meets the

discussed, the Board's decision was so authorized. Accordingly, we see no reversible error in the circuit court's affirmance of the Board's interpretation and application of the Requirement in this case.

## B. THE APA

Next, Schindler argues that the Board's decision is a "rule" under the APA and that it, as a "rule," is both procedurally and substantively invalid. The circuit court rejected this claim, and we see no reversible error in that conclusion.

Rules adopted by an agency must be promulgated in accordance with the APA's procedures and are not valid if those procedures are not followed. *Clonlara, Inc v State Bd of Educ*, 442 Mich 230, 239; 501 NW2d 88 (1993). "Because a rule alters rights or imposes obligations on society or an open-ended class, the APA prescribes an elaborate procedure for rule promulgation." *Mich Farm Bureau v Dep't of Environment*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165166); slip op at 17 n 18. There is no dispute that the Board's decision was not issued pursuant to the formal rulemaking procedures set forth in the APA. But as defendant correctly points out, that is because, under the plain terms of the APA, the decision does not constitute a "rule" subject to such procedures.

---

Requirement's definition of "independent." Schindler disputes this finding, but has not shown that it would be clear error to conclude that substantial evidence—that is, "more than a mere scintilla [of evidence] but less than a preponderance"—supports it. *Id*. at 232 (quotation marks and citation omitted). Similarly, Schindler insists that, under the terms of the Requirement, such a means is not necessary for its MRL elevators because unexpected vertical car movement is impossible during "maintenance or inspection" of the elevators' relevant parts. But the Board heard otherwise from representatives of both the Division and the IUEC, and Schindler's own warning label cautions that, "[w]hen adjusting, repairing, or replacing components, it is possible to cause unexpected vertical car movement which can cause serious injury or death." Schindler brushes this warning aside on the basis that the Requirement only applies if "maintenance or inspection" could cause such movement and, under Schindler's own operating instructions, "adjusting, repairing, or replacing components" do not fall within routine maintenance or inspection activities. The terms of Requirement, however, are what control the inquiry here, not Schindler's own definitions or policies—and those terms expressly include "adjustment of parts, components, and/or subsystems" within the definition of "maintenance." See ASME Safety Code, Section 1.3, p 12 (2010). Regardless, the Board made its decision after receiving competing perspectives and support regarding the elevators' safety and compliance with the Requirement and, under the substantial-evidence test, "it does not matter that the contrary position is supported by more evidence, that is, which way the evidence preponderates, but only whether the position adopted by the agency is supported by evidence from which legitimate and supportable inferences were drawn." *McBride v Pontiac Sch Dist*, 218 Mich App 113, 123; 553 NW2d 646 (1996). Even if this standard did apply to the Board's decision, we see no basis to conclude that it would not have been not met, let alone that it would have been clear error for the circuit court to conclude as much. *Buckley*, 281 Mich App at 231.

-9-

A "rule" is generally defined by the APA as "an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission of the law enforced or administered by the agency." MCL 24.207. The APA, however, expressly excludes from this definition a number of things, including "[a] declaratory ruling or other disposition of a particular matter as applied to a specific set of facts involved," MCL 24.207(i), and "[a] decision by an agency to exercise or not to exercise a permissive statutory power, although private rights or interests are affected," MCL 24.207(j).

The APA thus makes clear that the Board's decision—the disposition of an appeal and of a variance request regarding the Requirement's application to eight of Schindler's elevators—is not a "rule" subject to the statute's formal rulemaking requirements. Schindler's attempt to nonetheless portray this as impermissible rulemaking relies largely on the same fundamental misconstruction of the Board's decision discussed and rejected above. Schindler, for instance, argues that the Board's decision must constitute rulemaking because it effectively amended the terms of the Requirement, but as discussed, we do not read it to do any such thing.[11] Schindler also stresses that the decision is generally applicable, but that is based simply on the unexceptional proposition, acknowledged by defendant, that if the Board is presented with other elevators designed in the same way as those at issue here, it stands to reason that the Board would deem them noncompliant and not worthy of a variance as well. The Board's decision, in itself, does not purport to apply to any elevators beyond the eight that it specifically identifies, and while it may (like any disposition) help forecast the outcome of future, factually analogous dispositions, we fail to see how that would pull the decision outside of the APA's express exclusions and into the ambit of formal rulemaking. Accordingly, the Board's decision did not constitute a "rule" under the plain terms of the APA, and Schindler's arguments that the decision constituted a procedurally and substantively invalid rule must likewise fail.[12]

## C. PROCEDURAL DUE PROCESS

Lastly, Schindler argues that its constitutional right to procedural due process was violated because it was not given an adequate opportunity to address the position statement that the Division

---

[11] Schindler also argues that, even if the Board's decision is not a "rule" under the APA, it is an unlawful interpretive statement because it impermissibly amends the Requirement via a means other than formal rulemaking. It is difficult to follow Schindler's suggestion that the Board's decision could constitute an "interpretive statement" given that such a statement under the APA "is merely explanatory," MCL 24.207(h), whereas the Board's decision is a binding disposition of a specific appeal and variance request. In any event, for the reasons already discussed, we reject the notion that the Board's decision constitutes an amendment of the terms of the Requirement.

[12] Furthermore, we note that the core of Schindler's argument regarding substantive invalidity is that the Board's decision was arbitrary and capricious, and for the reasons already discussed, that argument would fail on its merits.

submitted to the Board.[13]  We disagree, and see no reversible error in the circuit court's rejection of this claim.

Under Michigan's Constitution, "[n]o person shall . . . be deprived of life, liberty or property, without due process of law."  Const. 1963, art 1, § 17.  The United States Constitution similarly provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]"  US Const, Am XIV.  "A procedural due process analysis requires a dual inquiry: (1) whether a liberty or property interest exists which the state has interfered with, and (2) whether the procedures attendant upon the deprivation were constitutionally sufficient."  *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004) (quotation marks and citation omitted).  Accordingly, "procedural due process requirements apply only if there is a liberty or property interest at stake."  *Upper Peninsula Power Co v Village of L'Anse*, 334 Mich App 581, 596; 965 NW2d 658 (2020) (quotation marks and citation omitted).  "To have a protected property interest, one must possess more than a unilateral expectation to the claimed interest; the claimant must have a legitimate claim of entitlement."  *York v Civil Serv Comm*, 263 Mich App 694, 702-703; 689 NW2d 533 (2004) (quotation marks and citation omitted).

In claiming a violation of its right to procedural due process, Schindler skips over the first step in the analysis and fails to substantively address or even identify the protected property interest that provides the basis for its claim.[14]  This is a necessary step in the analysis, see, e.g., *Hinky Dinky*, 261 Mich App at 605-606, and it is well established that a party "may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position," *Seifeddine v Jaber*, 327 Mich App 514, 519; 934 NW2d 64 (2019).

Nonetheless, assuming that Schindler had made the necessary showing of a protected property interest, we do not see a basis for a procedural due process violation.  "Procedural due process requires notice, an opportunity to be heard, and an impartial decision-maker."  *Upper Peninsula Power Co*, 334 Mich App at 596.  The essence of the requirement is that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."  *Bonner v City of Brighton*, 495 Mich 209, 238-239; 848 NW2d 380 (2014).  "All that is necessary, then, is that the procedures at issue be tailored to the capacities and circumstances of those who are to be heard to ensure that they are given a meaningful opportunity to present their case, which must generally occur before they are permanently deprived of the significant interest at stake."  *Id*. (cleaned up).

---

[13] Schindler also argues that its right to procedural due process was violated because the Board did not follow the APA's formal rulemaking procedures in issuing its decision.  That argument, however, assumes that the Board's issuance of its decision was subject to such procedures; as discussed, it was not, and so this argument correspondingly fails.

[14] Presumably, Schindler believes it has a protected property interest in receiving certificates of operation for its elevators rather than the temporary certificates that defendant has issued for them instead.  Schindler, however, has never attempted to articulate this interest or to provide any legal authority in support of it.

-11-

Schindler contends that its constitutional right to procedural due process was violated because it had not received a copy of the Division's position statement at the time of the Board's meeting, leaving Schindler without due opportunity to respond to it. Schindler's argument is grounded purely in fundamental notions of due process; it does not, for instance, argue that it was entitled to receive a copy of the position statement before the meeting by dint of the rules governing appeals and variance requests before the Board or any other specific procedural requirement. The record makes clear that Schindler and the Division had communicated multiple times in advance of the meeting, orally and in writing, regarding the Division's position on the elevators' noncompliance with the Requirement and Schindler's disagreement with it. The record also indicates that Schindler was given full opportunity at the Board's meeting to present its position and to hear and respond to the Division's presentation. And while Schindler identifies various aspects of the position statement that it disputes, there is nothing to indicate that any of those points, to the extent they were not expressly addressed at the meeting itself, were necessary to or a meaningful factor in the Board's decision. Schindler has not shown how, under these circumstances, the fact that it had not received a copy of the Division's position statement at the time of the Board's meeting left it unconstitutionally deprived of its right to due process—or how the circuit court reversibly erred in rejecting its argument to that effect.

Affirmed.

/s/ Christopher M. Murray
/s/ Stephen L. Borrello
/s/ Philip P. Mariani